## UNITED STATES GYPSUM CO., Inc. v. BALFANZ.

### No. 13589.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1951.

Rehearing Denied Jan. 24, 1952.

Tom K. Eplen, Abilene, Tex., for appellant.

Davis Scarborough, Larry Scarborough, Abilene, Tex., for appellee.

Before JOSEPH C. HUTCHESON, Chief Judge, and HOLMES and STRUM, Circuit Judges.

JOSEPH C. HUTCHESON, Chief Judge.

The suit was for damages for personal injuries sustained by plaintiff, a building contractor, as the result of a fall into an open air duct or tunnel in the heater room which plaintiff, as the contractor, had caused to be dug.

The claim in general was that while plaintiff was on his way to talk to two of his men who were working in one of the three large steel pipes or tubes, each thirty feet long and four feet in diameter and spaced about two feet apart, which composed the heater unit, he fell into the open end of the tunnel which defendant had negligently left open, unguarded and unlighted. More specifically, it was: that the tunnel had been dug there by his men under a contract he had with defendant; that while he was in charge of the premises he had maintained a barricade around it so that workmen in its vicinity would not fall

into it; that at an earlier date he had finished his work at that place and turned the premises back to defendant, and defendant had negligently removed the barricade and left the pit unguarded; and that when he was injured it was in connection with doing some finishing work which was not a part of the original contract.

The defendant admitted: that plaintiff had, under a construction contract with it, caused the pit to be dug; and that he had fallen into it while some of his men were working in tubes in the building where it was. Its defenses were: a denial that it was guilty of any negligence in respect of the pit; a denial that there was any reason for plaintiff, or any one else, to be, or to be expected to be, at, or in the vicinity of, the pit; the defenses of assumed risk and contributory negligence; and a defense that, in and by a clause of the construction contract, plaintiff and his partners had agreed to indemnify and hold defendant harmless.

.The case was tried to a jury and, at its conclusion, defendant moved for an instructed verdict, on the grounds: (1) that plaintiff had failed to show that defendant was guilty of negligence in respect of plaintiff; (2) that the evidence affirmatively showed that plaintiff was the sole author of his misfortune in that, having a choice of a safe and open way to approach his men, he deliberately chose a dark and dangerous one; (3) that, if any negligence on the part of the defendant was shown, the undisputed evidence, the evidence indeed of plaintiff himself, shows that he was guilty of contributory negligence, and that it was the proximate cause of his injury; and (4) that the terms of the indemnity agreement prevented his suing defendant.

The district judge, of a contrary opinion, submitted the case to the jury on the question whether defendant was negligent in leaving the pit open, unlighted and unguarded, and whether plaintiff was guilty of contributory negligence barring his recovery.

There was a verdict and judgment for plaintiff, and defendant is here, insisting: that it was error to refuse his motion for a directed verdict, and the judgment must be reversed and here rendered for it; and, in the alternative, that the refusal of defendant's requested charges Nos. two, four, five, six, seven and nine, requires a reversal and remand.

On its primary point, appellant points to the undisputed evidence,[1] including that of

---

1. The evidence adduced at the trial was without substantial conflict as to how appellee's injury occurred, disclosing that his firm did some half dozen contracts on this one job, including the building of the tunnel into which he fell, as well as all the surrounding foundation and masonry work of the heater room, in which was located the heater unit where appellee sustained his injury; that the heater unit consisted of three large steel pipes, each some 30 feet long and 4 feet in diameter, placed parallel to each other and spaced about 2 feet apart, at the north end of which, and directly below, was the open air duct or tunnel into which he fell.

It was further shown that at the time of appellee's injury these three tubes had been enclosed or covered over with a housing of steel plates, with all work inside the housing completed, so that appellee was in total darkness from the moment he entered the open end of the housing, between the tubes, at the south end, in attempting to reach his bricklayers who were laying brick inside the tubes; that the large heater room, which appellee entered on the east side, was about 90x50 feet in dimensions, with a heater unit therein, located on the west side thereof; that the heater unit consisted of some bearings or saddles erected on the concrete floor of the heater room, on which rested three large steel tubes or pipes, placed parallel to each other, in a north-south direction, spaced about 2 feet apart; that these pipes were each some 30 feet long, and on April 7, a steel shell or housing had been built around or over said pipes, so that they were completely covered and enclosed, except at the south end, where the housing was still open; that on said morning appellee's bricklayers were engaged in completing the laying of fire brick inside one of said tubes, near the north end thereof, at a point approximately over the spot where appellee fell into the tunnel; that the west terminus of this tunnel was at the west side of the heater unit, such tunnel running out from the north end of the heater unit in an easterly direction, curving to

plaintiff himself, showing that while plaintiff was an invitee in the building to the extent of having men working in the tubes, on a contract with defendant, he had no business for, he was not an invitee of, defendant and defendant owed him no duty of care, in respect of the dark and dangerous passage he had chosen through the building.

It further insists that, having himself caused the pit to be dug, he was charged with the knowledge of its existence and the

the south and thence into the plant proper.

Appellee testified that on the morning of April 7, he parked his car on the outside of the large heater room and entered same on the east side, where the wall had not then been erected; that he knew his brick masons were working inside the heater tubes, and when he entered he heard a lot of noise and saw a lot of work going on, but didn't have his mind on those boys; *that he went around to the south end of the heater tubes and saw his brick masons working inside one of them; that he imagined a man could walk or crawl through the tubes but he would get mortar all over his clothes and he didn't think anybody would want to walk through the tubes; that he started to walk in between the tubes, where it was dark and then decided to go around, but a drag line was in the way, so he just slid along the floor between the tubes and fell; that he didn't remember the hole into which he fell being there; but that he had been around this heater unit three times before he was injured; that he never saw the heater unit after the three tubes were covered; that he went to the south end of the heater tubes for the purpose of locating his men and did so locate them; that he didn't pay any attention to whether he could have gone west of the tubes to reach his men; that he couldn't see from the time he entered between the tubes because it was pitch dark; that he knew that the tunnel came on around under the tubes but on the morning of April 7, he didn't give the tunnel a thought; that they had no men working around his bricklayers, and no men were working in and around the tubes; that he could see where he was going until he started walking between the tubes; that he felt his way along because he was afraid he would stumble; that he "could have" picked up his speed in walking after he entered between the tubes; that when he fell he realized that the tunnel was the west terminus of the tunnel which his company had built; that he knew there were holes in the top of this tunnel but he didn't know just where they were; that he had had his eyes operated on while this job was in progress and he had turned same pretty well over to his sons; that his dander* *was up on the morning when he went over there and he had his mind on firing his bricklayers; that he was traversing unknown ground.*

Mr. Jeffrey, construction superintendent for the defendant, testified without contradiction that he left this job April 12, 1950; that the Balfanz Construction Co. was the principal contractor in the building of these improvements. He then described the heater unit in detail; and stated that the Balfanz bricklayers came back on this job April 4, 1950, to finish up their brick work in the heater tubes; that the steel erectors continued to go along with their work while the Balfanz men were off the job between March 25th and April 7th, and that on April 7th the north end or plate, and the sides enclosing the heater tubes, and the roof over the tubes, were all in place; and the steel erectors were making the connection of the frame work or housing over the heater tubes with the fan—in other words, they were completing the west wall of the housing (funnel part) to the fan; this witness further testified that it was very *dark where the tubes were; that all work north of the south end of the heater tubes, and on the inside of the housing where the tubes were, had been completed; that the Balfanz bricklayers came in from the north end of the tubes in which they were working; that no one else beside the bricklayers had anything to do inside the heater unit,* and there was no work at all that remained to be done on April 7 that would call for anybody going between the heater tubes; that there were no electric lights installed inside the housing with the tubes because it was a stove inside—too hot; that on April 7, 1950, Mr. Balfanz could not get around to the north end of the heater tubes to contact his bricklayers by walking between the heater tubes as he did for the reason that the front steel plate was up (on the north end) and he couldn't get through; that the tunnel into which he fell on April 7, 1950, was in exactly the same condition as when it was finished by the Balfanz Construction Co., without any change whatever; that this tunnel was about 7½ feet wide by 18 feet by 10 feet deep, walled with concrete, just like it was at the time of the trial and at the time Mr. Balfanz

exercise of care with respect to it, so that his deliberate choice of the passage and his carelessly stumbling along in the dark until he fell into it, prevented his recovery.

Finally, it urges here, as it did below, that the indemnity agreement bars his suit.

On its alternative point, the refusal of its requests to charge, defendant, insisting that they were correct statements of the law and that the refusal to give them deprived defendant of its right to have the jury pass upon its defenses, urges upon us that their refusal was reversible error.

While we cannot agree with defendant as to all of the requested charges, we do agree with it that, as to some of the charges, those submitting defendant's theories of contributory negligence,[2] this is so. Because, however, we also agree with it on its primary point, that a verdict should have been instructed for it, we will not set out the particular charges or give our reasons for believing that it was error to refuse them.

As applied to the undisputed facts of this case, the law is simple and plain, and we are in no doubt that a verdict for defendant should have been directed. While it is clear that plaintiff was an invitee on those portions of the premises of defendant where he had business to be, and defendant, as to such places, owed him the duty of due care, including the duty to warn him and protect him against latent or concealed perils, it did not owe him the duty to warn him of conditions known to him,[3] or in respect of places and situations where he had no reason to be, and where it had no reason to anticipate he would be.[4]

In addition, the undisputed evidence establishes as matter of law that plaintiff's own negligence was the sole proximate cause of his injury. It is a cardinal rule of law that "a person is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers and conditions of danger to which he is, or might become, exposed, and one injured as a result of his failure to use his faculties to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence."[5] Here the evidence of plaintiff showed that he exercised no care whatever. Though he had built the tunnel and knew that it was there, though he went into pitch darkness where he could only feel his way along, he kept on going forward in the confined space between the tubes, holding to them as well as he could and dragging and creeping and shuffling his feet along until he fell headlong. His testimony on page 235 of the record is typical: "Well, I didn't give the tunnel a thought. I wasn't thinking about the tunnel. I knew the tunnel was there, but I didn't remember about the hole being there. I didn't think about any barricades being up."

In this state of the evidence, there is no question for the jury. If he had shown that he used some care or thought for his safety, it would have been for the jury to say if it was that of a prudent man, but where, as here, his testimony shows that he took no thought, used no care, the matter is for disposition by the court by an instructed verdict, and not for submission to the jury.[6]

fell into it; that it was actually a big air duct. He further testified *that the bricklayers had to go through the tubes to get to their work as there was no other way.*

2. 30 Tex.Jur. 842; Graham v. Gatewood, Tex.Civ.App., 166 S.W.2d 768; 54 Am. Jur., 973 and 982-3.

3. Stamford Oil Mill Co. v. Barnes, 55 Tex. Civ.App. 420, 128 S.W. 375; Crump v. Hellams, Tex.Civ.App., 41 S.W.2d 288; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374.

4. 38 Am.Jur., 754; 756; 751, Sec. 100; 762, Sec. 101; 65 C.J.S., Negligence, §§

45, 81, 120, pp. 530-532; 579-80; 725; 44 A.L.R. 894-96; 30 Tex.Jur. p. 864, Sec. 180; Patterson v. Alabama Fuel Co., 194 Ala. 278, 69 So. 952; Gibson v. Lamesa Cotton Oil Co., 5 Cir., 178 F. 2d 959.

5. 65 C.J.S., Negligence, § 120, pp. 722-723; Shuck v. Security Realty Co., Mo. App., 201 S.W. 559.

6. Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564; Loughry v. Hodges, Tex. Civ.App., 215 S.W.2d 669; Peerless Mfg. Corp. v. Davenport, 281 Ky. 654, 136 S. W.2d 779, 781. Cf. Boyce v. Brewing-

It was error to refuse to direct a verdict for defendant. Because of that error, the judgment is reversed and judgment is here rendered for defendant.

ton, 49 N.M. 107, 158 P.2d 124, 163 A. L.R. 587, which, collecting the authorities, including three from Texas, thus states the principle which governs here: "Numerous cases support the proposition that any person, whether he be on the premises for the purpose of transacting business, or for social or other purposes, who, being unfamiliar with the premises, proceeds through the darkness on such premises, without being able to see what dangers such darkness may conceal, and there being no circumstances to show he was misled through a false sense of safety, is, at least in the absence of evidence indicating any emergency or stress of circumstances rendering it necessary that he should proceed, guilty of contributory negligence as a matter of law."