## Dallas Railway & Terminal Company v. Bernie C. Black et al.

No. A-3996.  Decided April 22, 1953.
Rehearing overruled May 20, 1953.
(257 S. W. 2d Series 416)

344

*Buford, Ryburn, Hincks & Ford* and *Howard Jensen*, all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the definition of the term "proximate cause" must include the applicable standard of care, and that in submitting its charge to the jury the court should have submitted an issue as to whether a "proper" hand signal was given by the bus operator instead of the issue which was submitted as to whether a hand signal was given. Said court also erred in reversing and remanding the cause generally instead of affirming that portion which denied Cody any recover against the railway company, since Cody did not appeal and therefore the judgment as between the two defendants became final. St. Louis S.W. Ry. Co. v. Powell, 252 S.W. 268, writ refused; Galveston, H. & S. A. Ry. Co. v. Bell, 110 Texas 104, 216 S.W. 390; Airlines Motor Coaches v. Guidry, 241 S.W. 2d 203.

*Mullinax & Wells*, of Dallas, for Respondents, Blacks.

In support of the judgment of the Court of Civil Appeals, respondents cite International & G. N. Ry. Co. v. Halloren, 53 Texas 46, 37 Am. Rep. 744; Trinity & B. V. Ry. Co. v. McDonald, 208 S. W. 912.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The wife of respondent Bernie C. Black suffered injuries when petitioner's bus on which she was a passenger was struck from the rear by a truck owned by Adrian Cody. In respondent Black's suit against petitioner Dallas Railway & Terminal Company and Adrian Cody the jury acquitted the bus driver of all acts of negligence alleged except that it found he was negligent in failing to keep a proper lookout to the rear, but it found that his negligence in that respect was not a proximate cause of the collision. The jury found that the driver of defendant Cody's truck was negligent in several particulars and that his negligence proximately caused the collision. The trial court's judgment was that respondent recover from Adrian Cody $1,000.00 and that he take nothing against petitioner, Dallas Railway & Terminal Company. On appeal by respondent Black the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for new trial. 254 S. W. 2d 147.

The first point of error complains of the ruling of the Court of Civil Appeals with respect to the definition of proximate cause given by the trial court in its charge. That definition is as follows:

"By the term 'proximate cause', as used in this charge, is meant that cause, which in its natural and continuous sequence, produces a result that would not have occurred but for such cause, and which said result or some like result ought reasonably to have been foreseen or anticipated in the light of the attending circumstances."

Respondent objected to the definition because as applied to the driver of the bus it failed "to encompass the high degree of care which such driver * * must exercise in reasonably foreseeing * * the result." And respondent requested the court to define proximate cause applicable to the conduct of the operator of the bus to mean "that cause which in its natural and continuous sequence produces a result, and without which cause such result would not have occurred, and which result or some similar result would not have been reasonably foreseen *by a person in the exercise of a high degree of care* in the light of the attending circumstances." (Emphasis added.)

The Court of Civil Appeals held that the trial court committed reversible error in overruling the objection to the definition and in refusing to define proximate cause in accordance with respondent's request.

The trial court's charge defines negligence as applied to petitioner, its agents and employees, to mean a failure to exercise a high degree of care; and the position taken by respondent and sustained by the Court of Civil Appeals is in substance that the standard or degree of care required of the Railway Company as stated in the definition of negligence should have been included also in the part of the definition of proximate cause that refers to foreseeing or anticipating the result.

The definition of proximate cause given by the trial court conforms to the test as repeatedly stated by the decisions in this state in negligence cases, and it is in substance, including the use of the words "foresee" and "anticipate", the definition used by the trial courts of the state for many years. This concept of casual connection and the definition used have been subject to criticism as unduly restrictive, confusing and illogical in the use of the "foreseeability of harm" formula, which, it is said, "is properly used to determine the issue of negligence but has no bearing on casual relation". Proximate Cause in Texas Negligence Law, by Leon Green, 28 Texas Law Review, p. 476, pp. 471-490, 621-645, 755-782. See also: Negligence, Duty and Causation in Texas, by W. Page Keeton, 16 Texas Law Review, pp. 1-7, 11-12; Duty, Negligence and Causation, by Clarence Morris, 101 University of Pennsylvania Law Review, pp. 189-200, 206-213; Restatement of the Law of Torts, Vol. 2, Secs. 430-435, pp. 1156-1177.

However, notwithstanding the criticism, which seems to be well founded in part at least, the test used in the trial court's definition and the definition including the element of foreseeableness have been uniformly approved as the rule in this state. Texas & Pacific Railway Co. v. Bigham, 90 Texas 223, 38 S. W. 162; Gulf, C. & S. F. Railway Co. v. Bennett, 110 Texas 262, 219 S. W. 197; San Antonio & A. P. Railway Co. v. Behne, (Com. App.) 231 S. W. 354; City of Dallas v. Maxwell, (Com. App.) 248 S. W. 667, 27 A.L.R. 927; Gulf, C. & S. F. Railway Co. v. Ballew, (Com. App.) 66 S. W. 2d 659; Southwestern Bell Telephone Co. v. Hardy, 131 Texas 573, 117 S. W. 2d 418; International-Great Northern R. Co. v. Lowry, 132 Texas 272, 277-278, 121 S. W. 2d 585; East Texas Motor Freight Lines v. Loftis, 148 Texas 242, 247-248, 223 S. W. 2d 613.

The same rule has been followed in many states, although there is a trend in some of the late decisions to eliminate foreseeable consequence in determining proximate cause and to hold the defendant responsible for all damages that in fact result from his negligent conduct. Sherman and Redfield on Negligence (Rev. Ed.) Vol. 1, pp. 91-99, Secs. 33-36; 38 Am. Jur. pp. 705-715, Secs. 57-62.

We find no decision directly decisive of the question presented here. The opinion of the Court of Civil Appeals cites as in point two cases which hold that the giving of a charge defining proximate cause in substantially the same language as that contained in respondent's requested definition is not reversible error. They are Dallas Railway & Terminal Co. v. Menefee, 190 S. W. 2d 150, and Dallas Railway Co. v. Hallum, 276 S. W. 460, application for writ of error refused. It does not follow from those decisions, however, that there is reversible error in refusal to define proximate cause so as to require the defendant to exercise a high degree of care in foreseeing the result.

Chief Justice Phillips, speaking for this Court in Galveston, H. & S. A. Railway Co. v. Bell, 110 Texas 104, 106, 216 S. W. 390, which was a suit against a railway company for personal injuries suffered by a passenger, said:

"The test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act."

In Panhandle & S. F. Railway Co. v. Miller, 64 S. W. 2d 1076, 1077, the appellant complained of the usual definition of proximate cause given in the court's charge because it failed "to apply the standard of ordinary care and prudence to the element of foreseeability." In overruling the contention the Court, through Justice Funderburk, said:

" 'Ordinary care' is the test of the existence or not of negligence. Any inquiry as to proximate cause presupposes the existence of negligence, and therefore, of course, the existence of a failure to exercise ordinary care. We think that, after a jury has determined issues of negligence and therein have found that, in certain acts or omissions, the defendant failed to exercise that degree of care and prudence which an ordinarily prudent person would have done under the same or similar circumstances, it is sufficient, in order to enable them to further determine

whether such acts or omissions were proximate causes of certain injuries, that they be informed that, to be such, the acts or omissions must have been such that it could reasonably have been foreseen that some such injury would likely result."

In Kirkpatrick v. Neal, 153 S. W. 2d 519, a suit under the guest statute, the appellant complained of the definition of proximate cause given in the charge because it permitted a finding of proximate cause if the result should have been foreseen by a person of ordinary prudence rather than by a person acting in heedless and reckless disregard of the rights of others. In rejecting appellant's contention the Court said:

"It is believed that as the term 'proximate cause' has a well settled and long established legal meaning, that such meaning in the language usually used in expressing same is all that is required in embodying same in a charge to the jury, and this without regard to the quality of the act of negligence alleged, this going only to the degree of relief authorized by law."

The three decisions last cited at least tend to sustain the trial court's ruling rather than that of the Court of Civil Appeals. According to those decisions it is enough, regardless of the quality of the act of negligence alleged, that proximate cause be defined in the usual manner without adding to the definition words relating to the degree of care that the defendant is under the duty of exercising. Such words are appropriate to the issue of negligence rather than to causal connection.

The definition of negligence given in the court's charge instructs the jury that negligence as applied to the Railway Company means a failure to exercise a high degree of care and that as applied to the driver of the truck it means a failure to exercise ordinary care. In our opinion no good purpose would be served by enlarging the definition of proximate cause so as again to instruct the jury in that definition as to the degrees of care that the defendants respectively are required to use. It might be logical after using foreseeableness, which is an element of the issue of negligence, as a part of the definition of proximate cause, to go farther and include also a definition or explanation of the care to be used by the defendant in foreseeing a harmful result and thus to bring into the definition of proximate cause more of what belongs to the issue of negligence. But experience rather than strict logic is often more helpful as a guide in administering the law. The value of the accepted test for deciding proximate cause we believe has been demonstrated in its con-

tinued use for many years. As said by Justice McClendon in discussing the test:

"This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability." City of Dallas v. Maxwell, 248 S. W. 667, 670, 27 A. L. R. 927.

■ We believe that adoption of the definition suggested by respondent would tend to confuse jurors rather than to help them. Definitions given in connection with special issues should be simplified. We approve the trial court's action in overruling the objection to the definition of proximate cause and in refusing the requested definition.

Reversal of the trial court's judgment by the Court of Civil Appeals was on the further ground that respondent's objection to the issue submitting the question whether the operator of the bus failed to give a hand signal of his intention to stop should have been sustained and a more adequate issue requested by respondent submitted to the jury.

Respondent alleged as negligence on the part of the operator of the bus proximately causing the collision that he stopped the bus suddenly and without warning and without having extended his left hand and arm out of the window a sufficient distance and for a sufficient length of time before stopping, and without making an arm signal clearly visible to traffic following him for a sufficient period of time before stopping the bus so that traffic following, including the ice truck, could be alerted to the fact that the driver of the bus intended to stop.

The court's charge asked the jury: "Do you find from a preponderance of the evidence that at the time and on the occasion in question the operator of the bus failed to give a hand signal of his intention to stop?" The issue was answered "No."

Respondent's objections to the issue as submitted were in substance that it failed to inquire of the jury whether the operator of the bus gave a proper hand signal and whether in giving a hand signal he failed to give that character of signal that

a person in the exercise of a high degree of care would have given under the same or similar circumstances.

Respondent requested the court to give a special issue asking the jury whether it found from a preponderance of the evidence that the operator of the bus failed to give a proper hand signal of his intention to stop. And respondent requested the court to give to the jury a special issue inquiring: "Do you find from a preponderance of the evidence that at the time and on the occasion in question the operator of the bus failed to give the hand signal which a very careful and prudent operator would have given under the same or similar circumstances?"

■ Before Chapter 421, Acts Regular Session, 50th Legislature (1947) p. 967 (Vernon's Annotated Civil Statutes, Article 6701d) was enacted, the statute prescribing signals to be given before turning or stopping a vehicle on the public highways was Article 801(K) of the Penal Code. That article, written in rather general terms, required the operator of a vehicle to give a "plainly visible or audible signal". The Act of 1947, entitled "Uniform Act Regulating Traffic on Highways", is a comprehensive statute which by its Section 156, with some exceptions that do not include Article 801(K), repeals all laws or parts of laws inconsistent or conflicting with the provisions of the Act. Sections 68 to 70, which are more explicit than the provisions of Article 801(K), set out the manner in which signals shall be given for turning movements and stopping. And Section 143 prescribes a greater maximum penalty for the violation of any of the provisions of the Act than was prescribed by Article 801(K). In our opinion the provisions of the Act of 1947 with respect to the giving of signals when turning or stopping a motor vehicle on a public highway have superseded those contained in Article 801(K).

As to stopping, Section 68 of the 1947 Act provides that "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal". According to Section 70 the signal may be given either "by means of the hand-and-arm" or by a signal lamp or device approved by the department; and the hand-and-arm signal shall be given from the left side of the vehicle, and for a stop or decreased speed by "hand and arm extended downward".

We make a brief statement of the facts in evidence relevant

to the question as to the objections to the charge and the requested issues about the giving of a signal.

The truck owned by Adrian Cody and used for transporting ice was driven by William Farmer. Traveling on West Commerce Street in the City of Dallas, he first saw petitioner's bus at a stop light where West Commerce Street enters Fort Worth Avenue. When the light changed the bus went forward into the outside lane of Fort Worth Avenue. Farmer, going about 15 miles an hour, followed the bus into that lane and proceeded at about one hundred feet behind the bus. He testified that the bus was slowing down and suddenly stopped, that he put on his brakes, but the pavement being wet he skidded into the rear of the bus. He testified in answer to the question whether the bus driver made an arm signal prior to the time he made the stop. "No. If he did I didn't see it. I don't think he did." And further that before the bus stopped he was in the middle of the outside lane and in a position where he could see whether or not the bus driver made an arm signal, and that he was looking in the direction of the bus and believed he would have seen an arm signal had one been made. Farmer testified that the stop light on the back of the bus came on when it stopped, that he put on his brakes, which were in good condition, immediately on seeing the light, and that because of cars passing on his left he could not turn into the inner lane and could not pull to the right, there being on his right a stump or a tree or a telephone pole.

The driver of the bus testified that after having stopped at the light he drove about two hundred feet to the place where the collision occurred, that there was a sign for a passenger stop there, and when he was about seventy-five feet from the sign he saw a woman walking to the stop and knew that she wanted to become a passenger. He glanced up at the mirror and saw that traffic behind him was safe as far as he could see, and "I put my hand out the window and began to slow my bus down to just a gradual stop."

■ From the testimony, including that of both of the drivers of the vehicles, the jury might reasonably have inferred that an adequate signal of intention to stop was not given by the driver of the bus, that is, that he did not give a "hand-and-arm" signal as the statute directs, by hand *and arm* extended downward, or that if he gave any kind of signal he did not give it in the manner and at the time when it would have been given

by a driver exercising a high degree of care. The jury was asked merely whether it found from a preponderance of the evidence that the driver of the bus failed to give a hand signal. Its finding that he did not so fail is supported by the testimony of the bus driver, "I put my hand out the window." There is no evidence that he extended his hand *and arm* out and downward.

■ It is of course true that respondent had the burden of proving failure on the part of the driver of the bus to give a signal of his intention to stop, but the testimony of the truck driver that no arm signal was given by the bus driver before the bus stopped, that if it was given he did not see it, and that he did not think it was given, and further that he was looking in the direction of the bus and was in a position where he could have seen an arm signal had it been given, would have supported a finding that no adequate hand and arm signal was given, that is, that the driver of the bus failed to give a signal that would have been given by a very careful operator under the same or similar circumstances. In our opinion the jury in all probability would have found from the evidence that such a signal was not given had the trial court sustained respondent's objection to the issue in the charge and given one of the requested issues.

■ The first issue requested by respondent, that of a "proper signal", probably is subject to objection as indefinite and leaving the jury to speculate as to what is proper. The second issue requested is not in the language of the statute which defines the signal for stopping as hand and arm extended downward. However, the statutory definition prescribes a rule of conduct and does not abrogate duties of care imposed by the common law. Mere literal compliance with the statute in giving a signal does not relieve the opertaor of the duty, in giving a signal, to exercise under the particular circumstances the degree of care that the law imposes upon him. Airline Motor Coaches v. Guidry, 241 S. W. 2d 203, 208. We agree with the Court of Civil Appeals that reversible error was committed in the failure of the trial court to sustain the objection to the charge and in refusing to submit the second issue requested by respondent as to failure to give a signal.

■ We approve also the ruling of the Court of Civil Appeals that the trial court should have admitted respondent's testimony about the value of his wife's services, and in its charge should have included the value of her lost services as an element of the recoverable damages. Texas Central Railway Co. v. Burnett,

80 Texas 536, 16 S. W. 320; Gainesville, etc. Railway Co. v. Lacy, 86 Texas 244, 24 S. W. 269; Galveston, H. & S. A. Railway Co. v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78, application for writ of error refused; Weadock v. Denham, 299 S. W. 301; Speer's Marital Rights (3rd Ed.) p. 652, Sec. 529.

Petitioner assigns error to the judgment of the Court of Civil Appeals in reversing and remanding the cause instead of affirming that part of the trial court's judgment which denied Adrian Cody recovery against petitioner. The trial court's judgment provides that respondent take nothing against petitioner Dallas Railway & Terminal Company and that he have judgment against Adrian Cody for $1,000.00, and that Adrian Cody take nothing against petitioner, the Railway Company. Respondent appealed, making his appeal bond payable to Adrian Cody and the Railway Company. Adrian Cody did not appeal.

The provision in the trial court's judgment that Adrian Cody take nothing against the Railway Company indicates that he filed a cross action against it, but the transcript does not contain an answer or cross action or any other pleading in behalf of Adrian Cody. In view of this condition of the record, we do not know what Adrian Cody's cross action was, and consequently cannot determine whether the rights or claims asserted in his behalf by the cross action are dependent upon the rights of the other parties. It is therefore our opinion that, in accordance with the general rule, the entire cause should be remanded, as directed by the Court of Civil Appeals, so that there may be one judgment. J. M. Hamilton & Co. v. Prescott, 73 Texas 565, 566, 11 S. W. 548; Stolpher v. Bowen Motor Coaches, Inc., 190 S. W. 2d 376.

The judgment of the Court of Civil Appeals reversing the judgment of the district court and remanding the cause for new trial is affirmed, the trial to be in a manner not inconsistent with this opinion.

Opinion delivered April 22, 1953.

Rehearing overruled May 20, 1953.