**C. B. BROWN, Appellant,**

v.

**AMERICAN AIRLINES, Inc., and Delta Air Lines, Inc., Appellees.**

**No. 16318.**

United States Court of Appeals
Fifth Circuit.

May 9, 1957.

Rives, Circuit Judge, dissented.

Joe Hill Jones, Ben T. Warder, Jr., Carter, Gallagher, Jones & Magee, Dallas, Tex., for appellant.

W. B. Patterson, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

A jury determined that the injuries to the fare-paying passenger Mrs. Brown, sustained as she was debarking from a DC–6 airplane at Dallas, Texas, December 22, 1954, were caused by the negligence of the carrier. The District Court, by motion *j. n. o. v.*, concluded otherwise and entered judgment for the Air Lines.

The physical facts concerning the aisles, passageways, door and ramp from the plane are undisputed, and for the rest, there is ample evidence to warrant the jury impliedly finding these others: the passenger, Mrs. Brown, accompanied by her husband, a more experienced traveler, was making her first flight on a commercial airliner from Birmingham to Dallas to enable her to visit relatives there during the Christmas holidays. During the flight the two of them were seated on the starboard (right) side of the main aisle running fore and aft in the plane. These seats were forward of the door which was on the port (left) side of the fuselage. The plane, with the capacity for 58, was carrying approximately 38 to 50 passengers. When the plane was secured for disembarkation, Mrs. Brown stepped into the aisle (22 inches wide) where she became a part of the large crowd of some 50 passengers each normally anxious to deplane, moving slowly through the aisle from both fore and aft converging on the small buffet area (approximately 41 inches by 48 inches) immediately in front of the exit door.

Two stewardesses were stationed in the buffet area facing aft so that, as Mrs. Brown turned from the aisle toward the exit door, she with those ahead of her, passed in front of the two young ladies, one of whom knew she was a novice passenger and the other of whom saw that she was apparently looking out intently through the door opening trying to catch a glimpse of persons she thought were to meet them.

While moving in this stream of the plane's passengers, approximately one-third of whom had preceded her, she stepped out through the door and suddenly fell on the flat landing platform of the adjustable mobile ramp. This ramp, of an approved and customary design, was made up of metal fixed steps with ordinary risers and, at the top, a flat, level, metal landing platform, the end of which was pushed against the hull of the plane at, but eight or nine inches below, the exist door. To avoid damage or strain to the plane door itself, it was necessary that the landing platform be somewhat below the level of the bottom edge of the door port.

Assuming that there may have been inadequate proof that the stepdown was itself excessive, greater than that either normal or necessary, the jury, utilizing

the experience of everyday affairs, was justified in concluding that while she knew that there must be steps to go down from plane to ground, there was nothing to advise her as a passenger whose inexperience was categorically known to the stewardesses nearby, that in making the first step out of the plane, it would be a substantial drop rather than on to a platform nearly level with, and more or less as a continuation of, the passageway. And, as a corollary, would be the expectation that passengers would move ahead with the stream, walking slowly ahead as one normally might without taking special pains to look down and see the passageway—if passengers immediately ahead did not effectually block vision—before each foot was raised or lowered.

Consequently, if, as was the case here, there was a substantial drop off—even though it could be seen when on top of it just as the passenger would be taking the last step—the jury could infer that in the exercise of that high degree of care required by a common carrier, Hill v. Texas, New Mexico & Oklahoma Coaches, 153 Tex. 581, 272 S.W. 2d 91; Dallas Railway & Terminal Co. v. Black, 152 Tex. 343, 257 S.W.2d 416; Doss v. Southwestern Transportation Co., Tex.Civ.App., 89 S.W.2d 1092, writ of error refused, a prudent carrier would have cautioned this new and inexperienced traveler to watch her step closely as she stepped out of the plane and down onto the ramp. And what the abstract prudent common carrier might have been required to do could in fact so easily and readily have been done since two stewardesses were stationed at this very area and could, as they acknowledged they frequently did when some special circumstance of a particular passenger or condition suggested a hazard, have sounded a precautionary warning.

A conductor on a train would have the duty if the conditions posed a peculiar risk to alighting passengers, 8 Tex.Jur., Carriers, § 596; Lattimer v. Texas & Pacific Ry. Co., Tex.Civ.App., 106 S.W. 2d 727; Chicago, R. I. & G. Ry. Co. v. Wisdom, Tex.Civ.App., 216 S.W. 241, Tex.Com.App., 231 S.W. 344; 10 Am. Jur., Carriers, §§ 1376, 1396, and the crew of a commercial airliner, whose compact facilities, narrow passageways, restricted exit doors, crowded conditions as a large number of people seek to come out of a small space, the height, construction and position of portable landing ramps, present an unusual combination of circumstances to an inexperienced air traveler, should do as much.

And if fair-minded men could conclude, as we hold, that a common carrier exercising that high diligence for the safety of its passengers had grounds for anticipating that this situation presented a peril to one unfamiliar with condition generally, that very lack of experience on the part of the person to whom such duty was owed, was itself sufficient in determining contributory negligence of the passenger to require the conclusion that it was likewise for the jury to weigh the reasonableness of the passenger's conduct, Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 63. It was for the jury, not a court, to say whether an inexperienced passenger reasonably had to anticipate that, while moving slowly forward with the passengers occupying the confined, crowded passageway, there would be a substantial stepdown on leaving the plane and which, while created by the carrier, was, as now claimed, of such an open and obvious nature that the passenger ought to have appreciated it, Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; cf. Fain v. Goodyear Tire & Rubber Co., 5 Cir., 228 F.2d 508. Certainly it was not for a Court to say as the airline now seemingly contends through its strenuous reliance on United States Gypsum Co. v. Balfanz, 5 Cir., 193 F.2d 1, that, as a matter of law, a passenger leaving a modern luxury airliner must reasonably proceed as though he were engaged in an activity comparable to a man falling into

a hole while crawling through a tunnel in pitch darkness.

The case was one for the jury. Its verdict is reinstated and judgment is rendered for appellant Brown against American Airlines, Inc. and Delta Air Lines, Inc.

Reversed and rendered.

RIVES, Circuit Judge (dissenting).

Mrs. Brown was 52 years old, certainly not aged or infirm, in apparent good health, able to move about alone. The time was 1:05 P.M. and the area inside and outside the plane was well lighted. There was no defect in the plane or in the ramp.

No good reason appears why the rule applicable to airplanes should not be analogous to the one often applied to trains, and which is thus stated by the Court of Civil Appeals of Texas:

"We understand the general rule in such cases to be that it is the duty of the carrier to furnish safe appliances and facilities for alighting from the train and give the passenger a reasonable time within which to alight upon arrival at his destination, and that ordinarily the carrier is not burdened with the duty of a personal assistance to a passenger in alighting from and leaving its trains. * * * These authorities also hold that in Texas there are certain well-recognized exceptions to this general rule of assistance, as, for instance, where the passenger is 'blind, sick, aged, very young, crippled, or infirm and his condition is apparent or made known to the carrier.' 4 R.C.L. § 654, p. 1235. In such cases it is held that the carrier is bound to render such passenger the necessary assistance in boarding or alighting from its trains. 'On the other hand,' states the same authority, 'no duty to render assistance will devolve upon the carrier where the passenger is in possession of his faculties, of good health and able to move about alone, and there is nothing defective about the car plat-forms or steps and the place of stopping presents no special difficulties to those entering or leaving the car.'" Lattimer v. Texas & Pac. Ry. Co., Tex.Civ.App., 106 S.W.2d 727, 729.

Indeed, Mrs. Brown's counsel do not claim that she needed assistance. As stated in their last brief: "We have never contended that Mrs. Brown required assistance while deplaning but simply that the Appellees were under a duty to warn her of the approaching steps."

Mrs. Brown and her husband had walked up a similar ramp or set of steps about two hours earlier to board the plane in Birmingham. She knew, of course, that she had to walk down steps to dismount. I cannot see why the stewardesses owed her any duty to warn her of steps about which she already knew, or to tell her to watch her step, a precaution which a person of her age and capacity should have already learned.

She testified on cross-examination as a witness in her own behalf:

"A. There were people in front of me who kept me from seeing the steps.

"Q. That is the only reason you missed your step, isn't it? A. Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Did anybody shove you? A. No, sir.

"Q. Anybody touch you? A. No, sir, Mr. Patterson.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. It just didn't enter your head to stop, even though you were walking towards a door you knew was there and you knew you couldn't see, it didn't enter your head to stop, and you just kept going, didn't you? A. Yes, sir, I did."

In my opinion, the learned district judge was correct in concluding that there was not sufficient evidence to sustain a verdict for the plaintiff. See Reuter v. Eastern Air Lines, 5 Cir., 226 F.2d 443. I, therefore, respectfully dissent.