**SOUTHWEST WHEEL & MANUFACTUR-
ING COMPANY, Appellant,**

v.

**Joseph C. SHOLTS, Jr., et al., Appellees.**

No. 7509.

Court of Civil Appeals of Texas,
Beaumont.

Nov. 1, 1973.

Rehearing Denied Nov. 21, 1973.

Dayton G. Wiley, Wiley, Plunkett, Gibson & Allen, San Antonio, for appellant.

Carter, Callender & Branton, Baskin, Casseb, Gilliland, Rodgers & Robertson, Putman & Putman, San Antonio, for appellees.

DIES, Chief Justice.

Plaintiff below brought suit against defendants, Donald E. Warnke and Southwest Wheel & Manufacturing Company alleging Warnke purchased a wheel from Southwest, who furnished him an improper size in that a size other than he called for was furnished. That when this wheel and a tire of a different size were brought to plaintiff—a service station employee—for airing, an explosion occurred, causing plaintiff's personal injuries.

Defendant Southwest filed a cross action against Warnke for indemnity and/or contribution.

The case was submitted to a jury which found that Warnke purchased the wheel in question from Southwest; that at the time of purchase he ordered 14 inch wheels; that Southwest was negligent in furnishing the wheel in question (14.5 inch wheel), which was a proximate cause of the occurrence; that the wheel was purchased in the name of S & K Garage from Southwest Wheel & Manufacturing Company. The jury failed to find Warnke negligent in failing to determine the size of the wheel and also failed to find Warnke negligent in not determining that the tire in question was not the correct size or configuration to fit the wheel in question. It also failed to find that the tire in question was incapable of being properly mounted and aired on a 14 inch wheel (the size Warnke says he ordered at Southwest). It also failed to find that plaintiff Sholts was negligent in failing to determine the size of the wheel. And it failed to find plaintiff Sholts negligent in finding that the tire in question was not the correct size or configuration to fit the wheel in ques-

tion. It failed to find plaintiff Sholts negligent in airing the tire in question until the occurrence in question "under the circumstances and conditions when existing" and further failed to find plaintiff Sholts knew or should have known in the exercise of ordinary care the dangers to personal safety in mounting and in airing tires. To the issue whether on the occasion in question the failure of defendant Warnke to advise plaintiff Sholts that the sizes of the tire and wheel in question were different was not the sole proximate cause, they answered: "It was not the sole proximate cause."

Judgment was later entered for plaintiff Sholts against defendant Southwest in the amount awarded by the jury; that plaintiff take nothing against defendant Warnke; and that defendant Southwest take nothing against defendant Warnke, from which judgment defendant Southwest brings this appeal. It presents sixty-four points of error. To keep this opinion as manageable as possible we will group them in the main, as has appellant Southwest.

Appellant's first contention is that no duty can arise on the part of an innocent party to a transaction tainted by fraud. It argues that Warnke falsely represented he was ordering the wheels in question for one S & K Garage, although the wheels were for his personal use. This, says appellant, defrauded it and the State of Texas by avoiding a sales tax.

Warnke testified that shortly before Sholts' injury he made two purchases from Southwest, first four wheels, then later two more. He said before the first purchase, "Bill Swearingen," of S & K Garage, "called to Southwest Wheel Corporation to see if they had wheels that I wanted, and then they told me to go on over and buy them if I wanted them." He paid cash for the wheels. In the second purchase (the two wheels) he used the same procedure.

Mr. Kenneth Page, Manager of Southwest, admitted they sold wheels to individuals and agreed if plaintiff's attorney walked in there, he would sell him one.

Appellant cites Weatherford v. Aetna Insurance Company, 385 S.W.2d 381 (Tex.1964). There the purchasers of an auto obtained possession by fraud. Later the seller demanded its immediate return. The court held this was not a grant of permission to use the car so as to extend coverage on a policy of liability defining insured as any person using the auto by permission of the named insured. We do not believe this case supports appellant's argument. It also cites Queen Ins. Co. v. State, 86 Tex. 250, 24 S.W. 397 (1893), that an illegal contract is void and unenforceable and will not support a remedy. It cites Restatement of Torts 2d, § 388, Comment a at 301 (1965).

> "In all probability the rule stated would not apply in favor of a thief of the chattel, or one injured while the thief is using it. Nor would it apply, for example, in favor of a trespasser who entered an automobile and was injured by its condition."

Also, it quotes Prosser, 50 Minn.Law Rev. 791 at 819:

> " 'It is not necessary that the Plaintiff acquire any interest in the chattel, other than the right to make a lawful use of it, although it may be conjectured that an unlawful user, such as the thief of a car, will not be protected.' "

■ We have no such situation here. Warnke's explanation of why he went to Southwest, if not completely suitable to Southwest's procedures, was certainly cured by its manager's admission he sold to individuals and would do so to the attorney cross-examining him. Points one and two are overruled.

■ Section II of appellant's brief contains points three, four, and five and is headed "Contributory Negligence and Volenti Non Fit Injuria." It argues that Sholts was guilty of contributory negli-

gence as a matter of law. A fact issue becomes established as a matter of law only when the evidence is undisputed and reasonable minds can arrive at but one conclusion. Lucas v. Burrows, 499 S.W.2d 212 (Tex.Civ.App., Beaumont, 1973).

■ The witness Charles M. Strader was qualified as an expert in the field of tires and wheels and testified a 14 inch tire would mount on a 14.5 inch wheel without too much difficulty. It was his opinion that the ordinary service station worker was not aware of the existence of a 14.5 inch wheel. This testimony was fortified by other witnesses. While the wheel in question had a 14.5 marking, there is evidence that ordinary workers, such as plaintiff Sholts, aired any tire that would go on the wheel. And Sholts testified the tire was already mounted on the wheel when Warnke brought it to him for airing. There is evidence to support the jury's finding absolving plaintiff of contributory negligence. Appellant's third and fourth points are overruled.

By its point five, appellant complains of the court's failure to submit its requested issue on volenti, viz:

"Do you find from a preponderance of the evidence that on the occasion in question the Plaintiff, Joseph C. Sholts, knew and appreciated the danger of airing the tire in question on the wheel in question?"

Writing in 28 Tex.Bar Jrl. 21, 22 (Jan. 1965) our present Chief Justice of the Supreme Court had this to say:

"Ultimately, the Texas Supreme Court may come to the point of deliberately wiping the slate clean and attempting to start over. It may entirely abandon the concepts of 'no duty', *volenti non fit injuria,* and assumed risk in favor of simple negligence and contributory negligence; or it may limit the assumed risk doctrine to a very narrow band of cases. It was tempted to abandon the concept in McKee v. Patterson, but the majority of the Court felt bound by *stare decisis.* The same was suggested in *Halepeska,* but again the majority of the Court considered itself bound by the holdings of its predecessors. The Court, however, it seems to me, narrowed the types of cases in which 'no duty' or *volenti* will be applied, and I doubt that as presently constituted the Court will substantially enlarge the use of assumed risk."

Words used to explain what *Halepeska* means and does not mean have been legion since it was handed down. We think clearly the following quotation from it [Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 379 (Tex.1963)] makes volenti inapplicable to the facts of this case.

"The *volenti* doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, *volenti non fit injuria,* which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of *actual* knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger."

Plaintiff Sholts was a drop-out in the tenth grade of school and had no technical training of any kind. He had done bakery work, driven a school bus, and worked in service stations about twelve years. At the

time of his injuries, he was working for Koepp Chevrolet at LaVernia, which had a service station. His work was entirely in the service station. He described his duties as, "Just front work, pumping gas, adding oil, fixing flats." He worked twelve hours a day, six days a week for about $1.40 an hour. He knew Warnke, and on the day of the accident Warnke came in the station, "said he had a tire he couldn't inflate, would I inflate it for him?" The tire was already mounted on the wheel. All he remembers is putting air in the tire, and it blew up! He had never seen a 14.5 inch wheel, or even heard of one before this accident. He was asked, "Is there any place on a rim that is labeled the actual size of that rim? . . . I mean, do you know where to look for one?" He replied, "No, sir." His air hose had no gauge on it; he was using a pocket gauge which he used once while airing this tire. It showed somewhere "in the twenties." He didn't know what pressure was in the tire when it exploded, but he imagined "about five pounds or so more." When he checked with the gauge, the tire still had not seated, which he agreed was a little bit unusual. He knew the tire and the rim had to be the same size, but he didn't look on the side of the tire to determine its size or on the rim to determine its size; nor did he take a ruler and measure the rim diameter. His station did not have a cage to protect one when airing a tire. It was a pretty common occurrence to have trouble getting the tire bead to seat. Before this accident, he had never seen a tapered rim, such as the 14.5 inch which plaintiff says he received.

Warnke testified that within a week or two prior to the accident he purchased the wheel in question from Southwest, ordering a 14 inch wheel from a "young boy" behind the counter, who went to the back, and then came back saying, "The wheels are on the dock."

He got a used tire from his boss, in good shape, and took one of the wheels and tire to Koepp Chevrolet for mounting and airing by plaintiff Sholts. He was sure the tire was a 14 inch. He did not see the accident but heard the explosion and found Sholts lying on the ground behind his pickup. The tire was still on the wheel, but one side was blown off. When asked if he had ever ordered a 14.5 inch wheel from Southwest, he replied, "No, sir; and I did not even know they made such an animal."

Ewald Koepp, Jr., the owner of Koepp Chevrolet in LaVernia, population 700, testified he heard the explosion, went to the unconscious Sholts and saw that the tire was still on the rim; but one bead "had jumped over—off the outside of the wheel but the tire was still—one bead was still on the wheel."

On examining the tire, he found it to be a 14 inch, and the rim 14.5 inch. He was asked, "All right. How did you determine it was fourteen and a half inch wheel?" "Well, first I noticed the bead, the angle of the bead seat on the rim was at a different angle than that of your even sized wheels and then I noticed the stamp on it . . . on the inside of the rim. Inside of the rim portion." If the tire was on the wheel, this stamp would not be visible. Sholts was the only employee of the service station. He also had never seen a 14.5 inch wheel before. He was asked, "How about someone that goes in Southwest Wheel and says, 'Give me two fourteen inch rims.' Would the fact that he got two fourteen and a half inch rims be obvious to him?" To which he replied, "No."

The witness Wyatt Mercer, Jr., a service station employee in LaVernia, testified when a tire mounted on a wheel was brought in it was customary among service station attendants to simply take it and start putting air in it. He'd never seen an attendant measure a rim. But, he had mounted a 14 inch tire on a 14.5 inch rim without undue difficulty. He had never seen markings of size on a rim. When he aired a 14 inch tire on a 14.5 inch rim, it blew.

Witness Strader, in the tire business since 1935, has for the past five years worked with Shillstone Testing Laboratory analyzing tire failures. "We had at least four cases this past year involving a fourteen inch tire where they attempted to mount and inflate it on a fourteen and a half inch wheel." They go on without "any excessive difficulty." In response to a hypothetical question, he stated that the difference in the size of a 14.5 inch wheel and a 14 inch tire would cause the tire to explode.

Witness Emmett Damron, who owns two service stations in the San Antonio area, testified it was customary when a tire was brought in already mounted to inflate the tire without investigating the size of the tire or rim. If it is not mounted, then attempt to mount it and if successful, air it. He also had never seen or heard of a 14.5 inch rim or tire.

■ We have summarized at length from some of the evidence, because we feel it necessary in discussing this and subsequent points of appellant. This evidence, we feel, does not raise volenti. Point five is overruled.

Section III of appellants' brief is entitled "No Duty—No Negligence—No Proximate Cause—No Privity—Damages Not Within Contemplation of Parties." This section contains appellants' points six through twenty-nine.

■ Appellant's excellent and thorough brief cites us many cases in support of this section. We find no Texas cases dealing with the situation we have here: asserted negligence of Southwest in furnishing a size wheel not ordered and resulting injuries. Nor do we believe the case cited by appellees is determinative, Cohn v. Saenz, 211 S.W. 492 (Tex.Civ.App., San Antonio, 1919, writ ref.). There Rufino Saenz sued Ramon Saenz, a storekeeper at Palito Blanco, and M. D. Cohn, a merchant at San Diego, because of personal injuries to his wife sustained when a coal oil lamp ex-

ploded. He alleged that gasoline had been delivered to his child by Ramon in place of coal oil and that Cohn had negligently sold a barrel of gasoline to Ramon instead of coal oil. The court held that Cohn owed a duty to the purchaser and the public to deliver coal oil and not gasoline. But, it is not difficult to see that delivery of so volatile a commodity as gasoline to be used in a coal oil lamp is not the same as delivery of a 14.5 inch wheel, which of itself has no inherent danger. The many cases cited by appellant concerning inherent or defective products do not answer our problem here. This wheel was not defective or inherently dangerous. From the lengthy summary of plaintiff's evidence set out above, we believe the jury's findings of negligence by Southwest and lack of contributory negligence by plaintiff are supported.

■ The serious question is whether Southwest's negligence was a proximate cause of plaintiff's injury. It was a cause in fact, but whether it was "foreseeable" in this type of situation seems to be of first impression in our state. Our courts have repeatedly stated that foreseeableness or anticipation of injury is a necessary element of proximate cause. See the many cases cited under 40 Tex.Jur.2d, Negligence, § 20, 472 et seq. The test is whether in the light of all the attending circumstances, the injury was such as ought reasonably to have been anticipated as the consequence of the act. Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S. W. 390 (1919).

Or stated slightly differently, anticipation of consequences is a necessary element in determining whether an injury is proximately caused by a negligent act. Houston Lighting & Power Company v. Brooks, 161 Tex. 32, 336 S.W.2d 603 (1960).

■ Could Southwest anticipate or foresee that in supplying a 14.5 inch wheel when a 14 inch was ordered would produce Sholts' injuries? We answer in the affirmative.

There is evidence that a 14 inch tire will mount on a 14.5 inch wheel without much difficulty. There is also evidence that the ordinary station attendant will air any tire that mounts on a wheel. Further, that this combination of a 14.5 inch wheel and a 14 inch tire will explode when aired.

Southwest was in the business of supplying wheels of all sizes and knew or ought to have known these facts. Appellant's points six through twenty-nine are overruled.

■ Section IV of appellant's brief contains points thirty through thirty-three and is entitled "No Agency or Scope of Authority." We have no quarrel with the authorities there cited that agency must be proved and cannot be presumed, but the testimony of Warnke, heretofore summarized, we believe supports the jury's finding to special issue number one that he purchased the wheel in question from Southwest. Points thirty through thirty-three are overruled.

Section V of appellant's brief is captioned "Identity of Wheel Not Traced to Appellant, No Proof of Size of Wheel Actually Delivered, and No Proof That A Wrong Sized Wheel Caused the 80% Used Tire to Explode." This section contains its points thirty-four through fifty-one.

We believe the testimony summarized in this opinion supports the jury findings challenged by these points of error and they are overruled.

Sections VI and VII in appellant's brief contain points fifty-two through sixty-two. We find them without merit and they are overruled.

Section VIII is entitled "Conduct of Warnke as Intervening Cause or as Basis for Indemnity and Contribution."

■ The evidence herein summarized supports the jury finding to special issue number five, viz: Do you find from a preponderance of the evidence that the failure of Donald Warnke to determine the size of the wheel in question was negligence? To which they answered, we do not. Likewise, we believe the evidence supports the jury's failure to find that Warnke's failure to determine the tire in question was not the correct size or configuration to fit the wheel in question was negligence to be supported by the evidence. (Special Issue No. 7) That being so, Southwest is entitled to no contribution or indemnity from Warnke. See 13 Tex.Jur.2d, Contribution, § 12, 698, R.S. Art. 2212.

The judgment of the trial court is affirmed.

KEITH, Justice (dissenting).

I respectfully dissent. The majority, after reviewing the evidence in detail, holds that the jury findings convicting Southwest of negligence have ample support in the evidence. The opinion then considers the question of proximate cause saying: "It [Southwest's negligence] was a cause in fact, but whether it was 'foreseeable' in this type of situation seems to be of first impression in our state." (Op. p. 392)

Although the legal scholars are in substantial accord that the element of foreseeability is not properly a part of the definition of proximate cause,[1] Texas is firmly committed to its inclusion therein. Clark v. Waggoner, 452 S.W.2d 437, 439 (Tex. 1970), and cases therein cited. Indeed, the court examined the question in detail in Dallas Ry. & Terminal Co. v. Black, 152 Tex. 343, 257 S.W.2d 416, 417–418 (1953), and concluded that Texas should continue to treat foreseeability as a part of proximate cause rather than as an element of the issue of negligence.

Being required by prevailing authority to treat foreseeability as a part of the proximate cause question, I need but turn to the

---

[1]. There is an exhaustive discussion of the question in 100 A.L.R.2d 942, 974, "Negligence—Causation—Foreseeability," wherein the more recent authorities are considered in addition to those discussed by Judge Smedley in *Black*, infra.

words of Chief Justice Gaines in Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 164 (1896),[2] which are controlling in the case at bar: "In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in injury of the person of the plaintiff."

Since in the sale of the wheels Southwest was not required to exercise prophetic ken, it should not now be required to respond in damages to plaintiff in this cause. I do not join in the affirmation of the judgment which casts it in liability.

2. *Bigham* was the first case cited by Judge Smedley in *Black,* supra, approving the inclusion of foreseeability in the definition of proximate cause.