### DALLAS RY. & TERMINAL CO. v. MENEFEE.
### No. 13632.

Court of Civil Appeals of Texas. Dallas.
July 27, 1945.

Rehearing Denied Oct. 5, 1945.

Burford, Ryburn, Hincks & Charlton and Bruce Graham, all of Dallas, for appellant.

Carden & Hemphill, of Dallas, for appellee.

YOUNG, Justice.

Appellee's action for damages against the Street Car Company resulted in a jury verdict in the sum of $2,310.75; the latter having seasonably brought an adverse judgment in such amount to this court for review.

On May 8, 1942, Mrs. Menefee had boarded defendant's car in the vicinity of her East Dallas home, paying fare and transferring to its public bus downtown. The destination was Loma Alto and Beverly Drive (North Dallas) and her claim of injuries was incidental to the journey's end. It is plaintiff's contention that when the bus had stopped at the named intersection and while his wife was in the act of alighting, the said vehicle suddenly moved with a forward jerk, causing her to fall in the street, whereby injuries were sustained, principally to right ankle. On the other hand, defendant plead that the injuries, if any, to Mrs. Menefee resulted from stumbling after she left the bus.

The jury issues and answers are given, quoting some in full, all numbered as in the court's charge: (Issue 2) Driver of the streetcar bus upon the occasion in question did not start such bus at a time when Mrs. Menefee was in the act of leaving same; (2-a and 2-b on negligence and proximate cause not answered, being conditionally submitted); (No. 3) "Do you find from a preponderance of the evidence that the driver of the streetcar bus upon the occasion in question, caused the bus to jerk while Mrs. Menefee was in the act of stepping from the bus?" Answer: "Yes." Issues 3-a and 3-b, conditionally submitted, were: "Do you find from a preponderance of the evidence that the causing of said bus to jerk while Mrs. Menefee was in the act of stepping from the bus, if you have so found, was negligence?" Answer: "Yes"; "Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries, if any, sustained by Mrs. Menefee?" Answer: "Yes"; (No. 6) "Do you find from a preponderance of the evidence that Mrs. Menefee failed to keep a proper lookout for her own safety upon the occasion in question?" Answer: "No"; (6-a not answered); (No. 7) She did fail to hold on to the hand holds provided upon the bus, but that (7-a) such failure was not negligence; (7-b not answered); (No. 9) "The accident involved in this case" was not the result of an unavoidable accident; (No. 10) Damages in physical pain, mental anguish, loss of capacity past and future, etc., to plaintiff's wife $2,250, doctor's bill, medical supplies and medicines $85.75.

Material hereto are the following instructions taken from the court's charge: "You are further instructed that the term 'Negligence' as it is used in Special Issue No's 2-a, 3-a in this charge, means a failure to exercise a 'High degree of care * * *.' You are further instructed that the term 'High Degree of Care' as used in

this charge means that care which would be exercised by a very cautious, prudent and competent person under the same or similar circumstances. * * * You are further instructed that the term 'Proximate cause' as it is used in Special Issues No's 2-b; 3-b; in this charge means that cause which, in its natural and continuous sequence, unbroken by any new independent cause, produces a result that would not have occurred but for such cause, and which result, or some like result, ought reasonably to have been anticipated or foreseen by a very competent, cautious, and prudent person, in the light of the attending circumstances."

In effect, the points on appeal are: (1) Where the evidence was sharply in conflict, the court erred in failing to submit a jury issue on whether plaintiff's wife had completely alighted from the bus at time she fell; (2) the evidence being in further conflict as to whether she was a passenger at time of injury, the trial court erred in assuming that she was a passenger, and in defining defendant's negligence as a failure to use a high degree of care; (3) error in commenting on weight of the evidence in definition of negligence as applied to defendant; (4) error in defining proximate cause by requiring defendant to use the high degree of foresight of a very competent, cautious and prudent person; (5) evidence being conflicting on whether the alleged injuries were negligently inflicted, the court in jury issues erred in reiterating the word "injuries", thereby overemphasizing plaintiff's theory of the case; (6) court's error in overruling defendant's motion for mistrial following plaintiff's improper questioning of the jury panel as to ownership of stock in defendant corporation and another corporation not a party to this suit.

Bearing upon issues 3, 3-a and 3-b, plaintiff's petition alleged that while his wife "was in the act of leaving said bus, and before she had gotten safely therefrom * * * the said bus started forward causing a jerk" resulting in the fall and injuries complained of, which allegations had support in competent testimony. Describing her movements after defendant's car driver had stopped to unload passengers, Mrs. Menefee testified: "Before I got completely off the bus he gave a jerk or lurch and threw me. I was holding to the door"; stating that she was thrown down on left knee and jerked around toward side of the bus, turning right ankle. She further stat-

ed: "I asked him (bus operator) what his hurry was' * * * and he said 'my foot slipped off the clutch.' " Another passenger testifying for appellant and referring to Mrs. Menefee, said: "She was going down the step, I would judge from my recollection that she began to fall before she got off the last step with her foot, or her foot turned with her. * * * Q. Did you see her as she was falling? A. I did. Q. Where was she with reference to the bus door at the time you saw her falling? A. Well, like most of us going out, the doors were open and she was just going down." This witness had no recollection of the bus moving as Mrs. Menefee went down the steps.

Mr. Moore, bus driver, by deposition testified that the car did not move as Mrs. Menefee was attempting to alight; the following excerpts from his testimony being quoted:

"Q. What happened as Mrs. Menefee started to get off the front of the bus? A. After I stopped my bus she gets up and walks to the front door and starts to get off. She steps off the bus onto the pavement and as she turned and fixed to leave that bus one ankle turned and she fell almost down on the pavement, reached back and caught hold of my bus to keep from falling down.

"Q. At the time her ankle turned were either of her feet then on the bus step? A. No, sir. * * *

"Q. Did you see whether or not this lady caught hold of anything as she went down the steps to get off the bus? A. I believe she held to the door.

"Q. Was that before she got off the bus or after she got off the bus? A. As she was getting off the bus—I couldn't say.

"Q. Did you have any occasion to observe her feet as she alighted from the bus? A. Nothing other that just a regular passenger stop. I saw the lady was on the ground.

"Q. You saw the lady on the ground? A. Yes sir.

"Q. Had she then gone down or fallen in any manner when you saw that she was on the ground? A. No sir.

"Q. Did she have one or both feet on the ground at the time her ankle turned? A. Both.

"Q. And did she have hold of the bus or not at the time? A. She had just turned the bus loose and was turning around.

"Q. Which direction was she turning, to the front of the bus or back of it? A. To the back of the bus.

"Q. Did I understand you to mean she was making her turn at the time she fell? A. Yes sir.

"Q. I am not clear on whether at the time her ankle turned and the time she did start to fall that she then had hold of the bus or had turned it loose? A. She had turned it loose.

"Q. What then happened as her ankle turned and she started to fall? A. As her ankle turned and she started to fall she grabbed at the door of the bus."

Moore testified to setting emergency brake of his bus after the occurrence, getting off and assisting plaintiff's wife to the curb; he then called the dispatcher, telling him "that a lady had turned her ankle as she alighted from my bus, and he asked me how bad it was, if it was bad enough to send a cab for her, and I said I thought it was and he sent a cab out there"; further saying that her ankle "was swelled some before I left there. * * * It seemed like the ankle was hurting the lady."

Though appellant plead that the injury, if any, to Mrs. Menefee was sustained after she left the bus (the passenger-carrier relationship having ceased), no such issue was requested. The particular defense was therefore waived. Rule 279, Texas Rules of Civil Procedure. Still in issue, however, was plaintiff's theory that said fall had been sustained in process of alighting, i. e., while his wife was still a passenger; correctly presented, we think, in issues 3, 3-a and 3-b of the court's charge; and to which the instructions above quoted had particular reference, bearing as they did, upon defendant's legal duty in the fact situation thus presented. Unquestionably, while engaged in stepping from the bus (issue 3), Mrs. Menefee was defendant's passenger; ceasing to be such upon safely alighting at the stop intersection. El Paso Electric Co. v. Ludlow, Tex. Civ.App., 291 S.W. 619; Wittkower v. Dallas Railway & Terminal Co., Tex.Civ.App., 73 S.W.2d 867, writ refused. Applying the rule just cited to the testimony of bus driver Moore, it is doubtful, even under defendant's theory, that Mrs. Menefee had ceased to be a passenger when she fell; but the point need not be labored. The ultimate fact question posed by said issue 3 · was

whether the bus jerked or moved at a time when plaintiff's wife was conclusively a passenger; and the instructions complained of, being confined to her act of alighting alone, are not viewed as upon any weight of the evidence. Appellant's authorities are not in conflict with the conclusions thus reached. In San Antonio Public Service Co. v. Turbin, Tex.Civ.App., 153 S.W.2d 343, 344, the issues establishing liability were not stated, the San Antonio court simply holding that the trial court's manner of submission "assumed that she was a passenger on the bus"; and in Northern Texas Traction Co. v. Nicholson, Tex.Civ.App., 188 S.W. 1028, 1029, where evidence tended to show an injury after Mrs. Nicholson had safely disembarked, the charge, a general one, was clearly erroneous in telling the jury "that it was 'the duty of defendant's servants in charge of defendant's car *at the time and place of the alleged accident* to have used for the safety of plaintiff's wife' the highest degree of care, etc." (Italics ours.)

Appellant further argues error in the trial court's definition of proximate cause by requiring of defendant under issues 2-b and 3-b, the foresight of a very competent, cautious and prudent person; whereas its legal duty involved no more than ordinary care with respect to foresight. Correctness of the challenged instruction is attested by unbroken appellate decisions, beginning with International & G. N. R. Co. v. Halloren, 53 Tex. 46, 37 Am.Rep. 744. See Fort Worth & D. C. R. Co. v. Kidwell, Tex.Civ.App., 249 S.W. 303; Id., 112 Tex. 89, 245 S.W. 667; Trinity & B. V. R. Co. v. McDonald, Tex.Com. App., 208 S.W. 912; and opinions of this court, Waters v. Texas Electric Ry., 267 S.W. 1005; Dallas R. Co. v. Hallum, 276 S.W. 460, writ refused.

Complaint is made of overemphasis of the word "injuries" in issues 2-b, 3-b, 6-a, and 7-b, each referring to "the injuries, if any, sustained by Mrs. Menefee." Appellant does not suggest what more appropriate or less objectionable term could have been employed; and testimony as a whole conclusively demonstrates that some injury, at least, resulted to plaintiff's wife. The court was thereby restating a fact hardly disputed; moreover, we think, the "if any" saving clause of these issues repels any inference that a given fact has been unduly emphasized.

Members of the jury panel were asked on voir dire examination by plaintiff's counsel as to ownership of stock in defendant company, followed by similar question relative to Dallas Power and Light Company, to which latter query an objection was made and sustained. As disclosed by the bill, Mr. Hemphill then made known to the court the purpose of such interrogation; not excepting, however, to the ruling made. We see no impropriety in the foregoing procedure, and appellant's claim of prejudicial error is considered groundless. Nothing of a reversible nature having been presented herein, the judgment appealed from is in all respects affirmed.

BOND, P. J., absent, not sitting.