## COLEMAN

### v.

### DALLAS RY. & TERMINAL CO.

No. 14762.

Court of Civil Appeals of Texas.

Dallas.

Jan. 22, 1954.

Rehearing Denied Feb. 19, 1954.

W. J. Durham, Dallas, for appellant.

Burford, Ryburn, Hincks & Ford, and Robert E. Burns, for appellee.

CRAMER, Justice.

Appellant Coleman filed this suit against appellee Street Railway Company to recover damages for personal injuries sustained by his wife Edith Coleman, as a passenger, when alighting from one of appellee's busses. He alleged negligence of the bus driver.

After trial before a jury, the jury in a special issue verdict, found (1) appellant's wife was injured; (2) that the bus driver did not close the bus door while Edith Coleman was attempting to pass through the door; (5) bus driver did not operate said door in such manner as to permit the door to close while Edith Coleman was attempting to pass through it; (8) the bus driver failed to keep a proper lookout for Edith

Coleman as she was attempting to pass through the door on said bus; (9) which was a proximate cause of her injuries; (10) Edith Coleman did not fail to keep a proper lookout; (12) the failure of Edith Coleman to remove her coat from the inside of the bus prior to the closing of the door was not negligence; (14) Edith Coleman did not permit the rear door of the bus to close on her coat without making any effort to hold the door open; (17) Edith Coleman did not fail to hold the door open until she removed her hand from the rod inside the bus; (20) the failure of Edith Coleman to move away free and clear of the bus prior to the closing of the rear door was negligence, but (21) such negligence was not a proximate cause of her injuries; (22) that the accident was not an unavoidable accident; and (23) found appellant's damage to be $3,250.

The trial court overruled appellant's motion for judgment on the verdict and sustained appellee's motion for judgment non obstante veredicto, which motion in substance asserted there was no evidence to sustain the jury's findings to issues 8, 9, and 21.

From the judgment as entered and the overruling of his motion for new trial appellant has duly perfected this appeal, and here briefs four points of error in substance: Error (1) in overruling and not sustaining his motion for judgment on the jury findings; (2) in sustaining the streetcar company's motion for judgment n. o. v.; (3) in disregarding the jury's answers to issues 8 and 9; and (4) in disregarding the jury's finding to issue No. 21 that the failure of Edith Coleman to move away free and clear of the bus prior to the closing of the rear door was not a proximate cause of her injuries, and in holding such failure was, as a matter of law, a proximate cause of her injuries.

The effect of the verdict was (a) to convict the streetcar company (issues 8 and 9) of one act of negligence proximately causing Edith Coleman's injuries and to acquit it of all other acts asserted by the Colemans; (b) to acquit the Colemans of all negligence except Edith Coleman's failure (issues 20 and 21) to move away free and clear of the bus prior to the closing of the door and that such act of negligence was not a proximate cause of the injuries; (c) found the amount of damages at $3,250.

The trial court in entering the judgment n. o. v. held, as a matter of law, the jury's findings to issues 8, 9, and 21 set out in substance above, were not sustained by any evidence of a probative nature; that there was no evidence to justify the submission of such issues to the jury.

■ This necessitates our reviewing the evidence most favorable to the Colemans to ascertain whether there was any evidence to sustain the jury's answers to issues 8, 9, and 21, bearing in mind that Edith Coleman was a passenger while stepping from the bus and ceased to be such passenger only upon safety alighting from such bus at the intersection. Dallas Ry. & Terminal Co. v. Menefee, Tex.Civ.App., 190 S.W. 2d 150 (ref. w. m.).

The evidence material to issues 8 and 9 is in substance that Edith Coleman and her husband B. L. Coleman on the occasion in question had boarded the Lemmon West Bus at the corner of Akard and Pacific Streets about 5:45 p. m. It was dusk dark and misting rain.

B. L. Coleman testified that when the bus reached Cedar Springs Street it turned off Haws onto Cedar Springs; he then pulled the cord for the next stop which was about the middle of the block. When the bus stopped he and Edith got up to go out the rear or back door; he had four or five medium-sized packages in his right arm; when he reached the door he pushed it open with his elbow and as he passed out he held the door (one side of the door,—the two sides open and shut together) open with his right elbow, and as he got off he caught the other side with his left hand. Edith was right behind him; she came up against the door before he turned it loose and stepped away. At that time his wife was in the door holding the rod that runs up and down from the ceiling

to the floor with her right hand and pushing the door with her left side, she having bundles in her left arm at the time. The next thing that happened, he heard her scream, turned around and saw her caught in the door and the bus moving away. He screamed for the bus to stop and after it had moved about five or six feet it did stop. He knelt down and started to put his hands on her, when some one told him not to move her, not to bother her until the ambulance came. He further testified he was almost clear of the bus the last time he saw her.

A police officer arrived first, then the ambulance, and his wife was taken to Parkland Hospital. Before that, she lay there "kind of gasping to catch her breath. She wasn't doing anything." He went with her to Parkland Hospital. From the time he and his wife entered the streetcar until the accident, passengers on the bus were scattered, not crowded; at the time they left the bus it was less crowded than at any time before. He knew no one on the bus. At the time of the accident his wife had on a dress-length coat.

John L. Henderson, a passenger on the bus, testified in substance material here that he did not know the Colemans before the accident. He was sitting in the seat across from the door and saw the Colemans when they started to get off the bus after it had stopped; Coleman got off first; then Edith. As she started out the door " * * * the bus driver was racing the motor exceedingly for the bus to move properly, I mean, roughly, and as she started to get off and Coleman had already gotten off the bus, the door came back and caught her arm in the door and drug her about eight feet, eight or nine feet, just estimating, and I hollered myself to the bus driver to stop, which he was looking ahead and not paying any attention to the back of the bus, and for him to stop, because he had caught the lady in the bus. Well, at that time, he had gone at least eight or nine feet, I would say, and then he stopped, and we came back to the back of the bus. I went on out the back door myself, to where the lady was laying, and when I saw her, she was laying underneath the back wheel there, the

wheel was just about to pass over her body, and he stopped, then, and then I run to my house and summoned the ambulance at that time.

"Q. Now, then, when she started out the door, did the bus move? A. Yes, sir, it moved when she started out the door.

"Q. Did it move off easily or did it move rapidly? A. It moved off very roughly, it just taken off in a—the motor, he was mashing the accelerator at the time of the bus take off, you know, as soon as —I mean the bus moved while she was stepping out of the bus.

"Q. Now, did you see her do anything when her arm was caught in the door, did you hear her say anything? A. She hollered and I mean—of course, I had seen then that the bus door was fixing to catch her in there, but she hollered, trying to attract attention, which she gained from some of the people, but I had already been hollering to the bus driver myself.

"Q. Now, when you saw her arm caught in the door, you hollered. What did you holler? A. I hollered to the bus driver that he had the lady caught in the door; to stop the bus.

"Q. What direction was he looking, then? A. He was looking straight ahead at the time.

"Q. Did he stop the bus, then? A. Not immediately, no, sir.

"Q. You say he had traveled either eight or nine feet? A. Yes, sir, I would say so.

"Q. Now, did you get off of the bus after that, after the bus stopped? A. Yes, I got off of the bus then.

"Q. Did you see Coleman's wife there? A. Yes, sir, I did.

"Q. What was she doing? A. She seemed to have been gasping and sort of faintified, not knowing too much of what was going on, it seemed.

"Q. And then where did you go? A. I run to my house, about two more blocks

up the street and used the telephone to call the ambulance." On cross-examination he testified in part:

"Q. Do you know who was holding the door as she was getting out the door? A. Yes, sir, her husband had gotten out first.

"Q. He got out first? A. Yes, sir.

"Q. Was he holding the door for her? A. As he was holding the door, the bus took off with this roughly take-off as they do, and caused a jerk.

"Q. All right, but at the time the bus started, he was still holding the door, is that what you are saying? A. The bus jerked the door out of his hands.

"Q. Was he holding the door when it started to move? A. He was holding the door, yes, sir.

"Q. Which hand was he holding it with? A. With his left hand.

"Q. With his left hand? A. Yes, sir.

"Q. Was he standing towards the back of the door, towards the back of the bus, or was he up in front? A. He was standing in back of the bus.

"Q. All right, holding it with his left hand? A. Yes, sir."

He also testified the door was in "Two pieces. * * * You can push one and the other one will come open." Also that the Colemans both had packages in their hands.

Edith Coleman testified in substance material here that she had been to town shopping and to a movie and when they left the movie they started home, boarding the Lemmon Bus; they sat near the rear; there was a fair number of people on the bus; when they neared their stop her husband got off and she followed, and

"Q. When you started out, what, if anything, happened to you? A. Well, when I started out the door come to and I caught it with my arm. He had hold of the door, and I stepped down with one foot on the ground, holding onto the rod with my right hand, and the bus gave a jerk, like, or something, and it kind of threw me off balance. I was still holding, and the bus went moving on, the door was closed. * * *

"Q. Could you get your arm out? A. No.

"Q. Now, what happened to you when the door closed on your arm and the bus started, what happened to you? A. Well, I tried to get my arm out, I yelled and the bus gave a jerk and it jerked me backwards and I hit my head.

"Q. Hit your head where? A. In the back.

"Q. Against where? A. Against the bus.

"Q. Did it hit any other portion of your body? A. Yes.

"Q. What other portion of your body hit against the bus? A. My back.

"Q. And what happened to you then? A. I don't know.

"Q. When you next knew anything, where were you? A. I was on the ground.

"Q. Did you see the bus, when you next knew anything? A. Yes.

"Q. When your head hit the bus, head and back, did it hurt it? A. Yes.

"Q. Did it knock you unconscious? A. I am sure it did.

"Q. Did you know anything there for fifteen or twenty minutes after then? A. No."

She was carried to Parkland Hospital in an ambulance. On cross-examination she stated she was rather hazy about her evidence on an oral deposition theretofore taken and in some places contradicted her evidence there. Further that she was holding the door at the time with the back of her hand, packages were in that arm; she was holding the rod with the other hand; the door started closing when one foot was on the ground and the other inside the door.

"Q. Well, you had turned loose of the door? A. Yes, when I stepped down, I was just about to make my other step on the ground when the door closed and the bus gave a plunge.

"Q. You understood that when you turned loose of that door that it was going to come to, didn't you? A. Yes, but I was going to be out of the door. It happened so quick, you know.

"Q. You have ridden that type of bus many times? A. Yes, I have.

"Q. And you understood thoroughly? A. Yes, I did.

"Q. That unless you held that door it was going to come to? A. That is right.

"Q. And that is the way they all were? A. Well, I held it until I was going to get my other foot off and the man just shot the gas to the thing and it kind of got me off balance.

"Q. Well, that was after you turned loose of the door, wasn't it? A. Yes.

"Q. Did the door hit either of your feet? A. No, I can't recall. * * *

"Q. I am talking about this occasion. I asked you did the bus move forward before the door came to? A. Before the door came to?

"Q. That is right. A. It moved just about the same time the door went to, I guess.

"Q. Do you know whether it moved forward before or after the door had closed? A. All I know, I wasn't quite off the bus.

"Q. That is not what I asked you. Were the doors completely to, had they come together before the bus started? A. I am trying to tell you now, I think it closed. The bus was moving by the time the door closed.

"Q. Then you say it was moving before the door came to? A. It was moving about the same time that the door went to, as near as I can remember.

"Q. That is the best you can tell us? A. Yes, it is.

"Q. At about the same time? A. Yes.

"Q. You don't know for sure whether it moved or not, do you? A. No, as near as I can remember, I'd say it moved closed, it was moving at the same time the door closed.

"Q. I will ask you this, on your deposition about the same point, Edith, and see if you recall this: 'But the bus had not started before the door closed on your arm, had it?' And you asked me, 'Had it not started before it closed on my arm?' And I asked you, 'That is right, I say the bus had not started up until it closed on your arm,' and you answered, 'No, sir.' And then started forward, and you said, 'That is right.' You remember telling me that? A. I imagine I did.

"Q. What it that? A. I am sure I did, I don't remember, but I am sure I said it. * * *

"Q. Did the motorman have any conversation with you? A. He came to me and asked me how badly was I hurt, or something, I really don't remember.

"Q. Do you remember me asking you, and this is on page 57, I asked you this, on line 4, 'Where was the operator at that time?' That is referring to after the accident happened and you were there on the ground, and you said, 'He came out.' 'Did he say anything about the accident?' and you said, 'Yes, he did.' Do you recall that? A. Yes, I do. 'What did he say?' 'He said there had been something wrong with the bus.' Do you remember that? A. Yes, I remember that.

"Q. All right, tell just what he told you? A. He said there was something wrong with the bus, there had been something wrong with it, or something, and he was going to report it, something like that, I am not too sure. I don't want to—I know he said something of that sort, but to whom he was speaking, I don't know.

"Q. You heard him make that statement? A. Yes, I did, but I do know the officers were there.

"Q. They were not there? A. They were there, but I don't know whether he was speaking to them or not.

"Q. All right, you don't know who he was talking to? A. No, I don't.

"Q. I asked you this, then. 'He said there had been something wrong with the bus?' and you said, 'Yes, there was something wrong with the door of the bus.' Do you remember telling me that? A. I probably did.

"Q. What? A. I probably did, I don't remember that.

"Q. Do you recall telling me that? A. No, I don't remember that.

"Q. And further stated that he would report it, and you said, 'Yes, he did.' A. Yes.

"Q. 'Did he say anything else?' And you said, 'He was talking to the police, I don't know what all he did say to him.' Do you remember that? A. Yes, I remember that.

"Q. Do you now recall that you heard the motorman tell somebody whether he was just making an announcement to the public or speaking to you or to the policeman, that there was something wrong with the bus and that he would report it? A. That is correct. To whom he was speaking, I don't know, but I do know that the officers were there. He could have been speaking to him, but as near as I can remember.

"Q. Do you or do you not recall saying, telling me that there was something wrong with the door of the bus, did you hear him say anything like that? A. Yes, I did hear him say.

"Q. You remember that? A. Yes, I did."

The police officer in substance material here testified he arrived just before Edith was placed in the ambulance; he did not talk to the Colemans about how the accident happened before the ambulance left with her; the bus left before he did; the officer then went to Parkland. While there she told him she was knocked down by the door of the bus while getting off; he then left the hospital, followed the bus line to town and at Pacific and Lamar Streets checked the bus door. He further testified:

"Q. Just tell the jury what test or examination you made, when you stopped the bus down there? A. I had a gentleman to hold the back door of the bus open and told the bus driver to put it in gear and proceed forward.

"Q. What happened then? A. Well, he made a motion with the gear shift or something. He said it pushed down and he said it won't go anywhere.

"Q. Did the bus move at all? A. It didn't move at all.

"Q. The test that you made with the back door open, the bus did not move forward at all, is that right? A. No, sir, it did not."

▬▬▬ The above evidence in our opinion made an issue of fact on proper lookout by the driver of the bus, and whether such failure was a proximate cause of the accident; also made issues of fact on negligence and proximate cause based on Edith Coleman's failing to move away free and clear of the bus prior to the closing of the door.

Based on the above conclusions, appellant's points 1 to 4 inclusive are sustained and the trial court's judgment is reversed and judgment is here rendered for B. L. Coleman against Dallas Railway & Terminal Company for $3,250, interest, costs, etc.

Reversed and rendered.