**Marvin FAIN, Appellant,**

v.

**The GOODYEAR TIRE AND RUBBER COMPANY, Incorporated,**
**Appellee.**

**No. 15638.**

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1956.

Royce Whitten, Coleman & Whitten, Denton, Tex., for appellant.

W. B. Patterson, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for appellee, Goodyear Tire & Rubber Co., Inc., Otis B. Gary, Dallas, Tex., of counsel.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages for personal injuries received by plaintiff when he tripped over the handle of a hydraulic jack which was then being used by defendant's employees in raising plaintiff's car in order to do a balancing job on the wheels.

The claim was that, though the jack was equipped with a safety device which permitted the handle to be raised two to two and one-half feet above the floor, defendant negligently left it protruding at, or slightly above, floor level for about three or four feet into the open space west of the car, and that plaintiff, in walking toward a water cooler which was located in a westerly direction from the car, caught his toe under the jack handle and tripped and fell, sustaining serious injuries.

The defenses were: a denial that defendant was negligent; and affirmative defenses, (1) that the defendant was not, and the plaintiff was, negligent, and his negligence was the proximate cause of the injury, (2) that, if defendant was negligent, plaintiff was contributorily negligent, and (3) that the happening was an unavoidable accident.

The cause was tried to a jury on these issues, and, when plaintiff had offered his evidence[1] and rested, the defendant

---

1. The evidence was in substance this:

Fain had driven his automobile into the Goodyear Store in the City of Denton, Texas, to have the wheels balanced. He drove the car into the store and headed it in a southerly direction with the front end adjacent to an open space in the store. The car was placed in this position as desired by Goodyear's employee in order that he might perform the necessary work to balance the wheels.

In addition to an area provided in said store for balancing the wheels on automobiles, Goodyear had displayed for sale various other merchandise including appliances. These appliances were in front of or to the south of the automobile belonging to Fain and between Fain's car and the row of appliances was a space approximately five feet wide. It was in this space that the accident occurred which injured Fain. Goodyear's employee pulled the jack and placed it under the front end of said car and raised the front of the car but left the handle of the jack protruding about three or four feet into said space.

The jack in question was a service jack of hydraulic nature that could be pulled about in the store and placed around or under an automobile as desired. The body or base of the jack was two or two and one-half feet in length and the handle was approximately three and one-half to four feet in length. The automobile belonging to Fain was raised in the usual manner by pumping the handle up and down until the desired height was reached. The jack had a safety feature on it which permitted the handle to be raised from the level of the floor until such handle should touch the bumper of the car and thus protrude at about a forty-five degree angle or a distance of two and one-half to three feet from the level of the floor. This was true because the pressure built up in the jack and when the handle was raised to the bumper it would stay in that position. The handle of this particular jack was approximately one and one-half inches in diameter, of iron or metal substance. When the handle was brought down to the level of the floor it would remain in this position unless it were raised to the safety position hereinabove described, but in this particular instance instead of leaving the jack handle in such safety position, that is, approximately two and one-half or three feet from the level of the floor, it was left by Goodyear's employee parallel with the floor with just enough room under said handle for Fain to place the toe of his shoe. In other words it was left in a north and south position lying in the open space in the path of customers as well as employees who might chance to walk that way.

While waiting for his car to be repaired, Fain was on the east side thereof near the front of the car but came around toward the front of the car,

moved[2] for an instructed verdict. Whereupon the court querying: "In what manner has the plaintiff raised an issue of fact in this case?", and argument following, the court stated, "I am going to overrule the motion at this time and let the defendant put on his case, but I will say it is my present opinion that the plaintiff has wholly failed to make a case."

Thereafter the defendant, without putting on any evidence, rested and renewed his motion, and the court instructed a verdict for defendant and entered judgment accordingly.

Plaintiff is here claiming under three specifications of error that the court erred in directing the verdict and in entering judgment for defendant without sending the case to the jury, and that the judgment must, therefore, be reversed.

In support of its contention, appellant relies on the well supported general principle that the issues in a negligence case must be sent to the jury unless the testimony is such that reasonable minds could reach only one conclusion thereon. In addition he meets head on the counter contention of appellee that this case is controlled by the decisions dealing with the law of "open and obvious" conditions. He does this by citing many cases[3] and specifically by seeking to bring this case within the "aisle" cases in which this and other courts have held that a case for a jury is made out where persons are injured by tripping or falling over obstructions in "aisles" kept and maintained in stores as passageways for employees and customers. Finally, he cites and relies on a jackhandle case, Kolb v. Isenberg, 150 Pa.Super. 482, 28 A.2d 729.

Appellee points out that under the undisputed evidence the injury occurred not in an aisle of a store but on the

turned west and started toward a water cooler which was located in a westerly direction from where the car rested. He proceeded down the aisle in front of the car and near the row of appliances hereinabove mentioned and in so doing caught his toe under the jack handle, tripped and fell on the concrete floor and broke both of his arms and seriously and permanently injured himself.

Fain's own testimony shows that he saw Goodyear's employee pull the jack in question across the floor; that he saw the jack and saw the employee put it under the front end of the car; that he knew the jack had a handle on it; that he saw the employee jack the car up and was standing within two or three feet of where the employee was working; that he had worked in a garage himself and had seen this type of jack and knew how it worked; and that even though he knew the jack was under the front end of the car, he walked around the front end of the car without looking to see where the jack handle was. Fain also testified that there was plenty of light so that he could see, and that even if the jack handle had been in the "up" position, he would probably have "bumped" it anyway. He also testified that the jack handle was not hidden or concealed.

2. Its grounds were as follows: That there is no evidence of any act of negligence on the part of the defendant which proximately resulted in the injury to the plaintiff; that if there was a defect, it was open and obvious and was as well known to the plaintiff as to the defendant; that the plaintiff knew where the jack was, and, though he knew this, he did not look out for it, but without cause or reason therefor stumbled and fell over it; that under said conditions, if there were damages and perils instant to the placing of the jack as it was placed on the date in question, such damages and perils were open and obvious to the plaintiff and plaintiff, knowing the facts, assumed the risks thereof; that the facts show without contradiction that on the occasion in question and immediately prior thereto, the plaintiff failed to keep a proper lookout, as a matter of law, and that such conduct on his part was negligence as a matter of law.

3. Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357; Phillips v. Montgomery Ward & Co., 5 Cir., 125 F.2d 248; Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625; H. E. Butt Grocery Co. v. Johnson, Tex.Civ.App., 226 S.W.2d 501; Dawes v. J. C. Penney Co., Tex.Civ.App., 236 S.W.2d 624; McCrory Stores Corp. v. Walker, 6 Cir., 220 F.2d 18; Lanier v. Great Atlantic & Pac. Tea Corp., 8 Cir., 205 F.2d 292, and note in 26 A.L.R.2d 667 through 697.

floor of a garage or work room where automobiles were brought to be jacked up and worked on. In addition it points to these controlling facts testified to by plaintiff: (1) that he had himself placed the car; (2) that he had watched the jack being put under the car and its being raised thereby; and (3) that he had, in a moment of inadvertence and forgetfulness, knowing but not keeping in mind that the jack was there, stumbled over it and fallen.

Upon these undisputed facts, appellee insists, and we agree, that under the law of Texas, as laid down in Robert E. McKee, General Contractor v. Patterson, Tex., 271 S.W.2d 391, 393,[4] and the numerous cases it cites, and in cases from this court,[5] the evidence did not raise a fact issue for the jury.

Fain testified: that he knew that the jack had a handle on it, indeed that he was familiar, from having previously worked in a garage, with the type of jack being used; and that he knew that the jack was under his car as he was standing only two or three feet from where the employee was working with it.

■ Since the use of the jack and its position was as well known to Fain as to the defendant, the defendant owed no duty to him to advise or warn him as to a condition which was open and obvious, and of which he admittedly knew, and it was not negligence for not having done so.

■ To appellant's jackhandle case, Kolb v. Isenberg, supra, appellant opposes O'Hanley v. Norwood, 315 Mass. 440, 53 N.E.2d 3, another jackhandle case where liability was denied, and in addition points out, as conclusively distinguishing the cases, that in the Kolb case the jack was being used on a public street as darkness fell and not, as here, in a well lighted store, and that there a pedestrian, knowing nothing about the jack's being there, fell over it,

---

4. "There are two legal theories, wholly aside from the plaintiff's own negligence, for denying liability in a suit against an owner and occupier of land brought by an invitee for injuries growing out of open and obvious dangers thereon. One rests on the judicial concept that there is no breach of any duty the landowner owes to his invitees. The other arises out of the doctrine of volenti non fit injuria—voluntary encountering of risk—which is regarded as a defense to all negligence actions. In this state both theories are recognized. * * *

"The burden was on the plaintiff, Patterson, to prove his case. To discharge that burden it was necessary that he adduce evidence showing not only that the defendant was negligent in the sense that he created or maintained a condition on the premises giving rise to an unreasonable risk of injury to persons thereon, but also that as to the class of persons to which the plaintiff belonged there was a breach of duty. In the instant fact situation, for example, a trespasser could not establish liability of the defendant because he could not prove a breach of any duty the defendant owed him. It logically follows that we must first determine whether in this case there was evidence to support a finding of a breach of duty by the defendant before we reach the other questions presented by the defenses of voluntary exposure to risk and contributory negligence.

"In determining whether a landowner is liable to an invitee for injuries sustained on the premises, the duty of the landowner is frequently phrased as one 'to exercise ordinary care to keep the premises in a reasonably safe condition' so that the invitee will not be injured. * * * But that is only a simplified statement of the duty, sufficient to meet the problems presented in the particular cases. There are certain qualifications not there expressed. It is now well established in this state that the duty as there expressed does not extend to those invitees who know or should know of the existence of the particular condition and who appreciate or should appreciate its dangers. * * * What the qualification means, of course, is that inasmuch as the invitee has knowledge of the dangers there is no duty on the owner to warn him of them. It means also that if, having knowledge of the dangers, the invitee exposes himself to them he must take the premises as he finds them and there is no duty on the owner to protect him even by the use of reasonable precautions to eliminate the hazards."

5. U. S. Gypsum Co. v. Balfanz, 5 Cir., 193 F.2d 1; Moss v. Safeway Stores, 5 Cir., 185 F.2d 966.

**512**

while here plaintiff knew everything about, indeed was the cause of, the jack's being used. Finally, citing the Balfanz and other cases, appellee insists that even if the issue of negligence was for the jury, the evidence establishes as matter of law that Fain was contributorily negligent and may not recover.

If the evidence in this case does not require an instructed verdict, both on the ground that evidence of negligence on the part of the defendant was wholly lacking and that plaintiff's own negligence was the proximate cause of his injuries, it would be difficult, we think, to find one in the books.

The district judge was right in instructing a verdict. His judgment is affirmed.