**C. S. OTTO, Appellant,**

v.

**Pat R. BOBO et al., Appellees.**

No. 6569.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 30, 1956.

Rehearing Denied Feb. 27, 1956.

G. A. Paquin, Muleshoe, for appellant.

Aldridge & Aldridge, Farwell, Crenshaw, Dupree & Milam, Cade & Bowlin, Lubbock, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment denying recovery in a suit for personal damages filed by appellant, C. S. Otto, against appellees, Pat R. Bobo, the Muleshoe State Bank and the City of Muleshoe, the latter two named appellees being hereinafter referred to as the bank and the city. Appellant charges he sustained personal injuries on July 28, 1954, for which reason he seeks personal damages against appellees in the sum of $10,400, by reason of striking his head on the end of a cross-beam forming a part of "an ox-yoke sign used as an advertising media" placed in a parkway in the city by Pat Bobo near a business building owned by the bank with a portion of it being occupied by Pat Bobo as a tenant and that all of the named appellees negligently permitted the sign to remain there which negligence of appellees resulted in appellant's injuries and damages.

Appellant's oral testimony, photographs and other exhibits introduced by him reveal the sign to have been a heavy cross-beam with an ox-yoke in the shape of a loop about one foot in diameter on each end of the cross-beam with the center of the beam fastened to the top of an iron post about five feet high set in concrete in the ground located wholly within the area of a dedicated parkway situated between the sidewalk on the south used by pedestrians and the concrete curb line on the north next to the street used for motor vehicle traffic. The parkway was approximately eight feet wide with the sign extending partially across the parkway in front of Pat Bobo's law office. Immediately east of the sign post was a concrete walk across the parkway leading from the street toward the front door of Pat Bobo's law office for the use of pedestrians. Immediately south of the parkway and between it and the bank building was a sidewalk used by pedestrians and immediately north of

the parkway was a concrete curb seven and one-half inches high separating the parkway from the paved street.

About 9:30 a. m. o'clock on the day in question the weather was fair when appellant parked his motor vehicle at the street curb near the sign in question, got out of his car, stepped upon the concrete curb immediately north of the sign in question and there hit his head against the end of the cross-beam, causing the alleged injuries for which he seeks recovery of damages from appellees. Appellant contends that Pat Bobo negligently placed the sign in the parkway and that the city and the bank both negligently permitted it to remain there, as a result of which all three named appellees are liable to him for the damages suffered by reason of his injuries sustained as a result of their negligence which proximately caused his injuries. Each appellee joined issues with appellant on all material questions presented denying liability for any damages and each appellee alleged that appellant's injuries resulted solely by reason of his own contributory negligence or that such was the proximate cause of his injuries in any event. They further pleaded that the presence of the ox-yoke sign located on the parkway was open and obvious to the public and to appellant in particular and that he knew or should have known by the exercise of ordinary care it was there for which reason he assumed any and all risks involved by voluntarily going upon the parkway.

The case was tried to a jury but after appellant introduced his evidence and rested, the trial court sustained separate motions filed by each appellee to, in effect, withdraw the case from the jury and render judgment for them, which is equivalent to an instructed verdict. In doing so the trial court concluded that appellant had not, as a matter of law, established a case of negligence against either of the appellees and had, as a matter of law, admitted contributory negligence by reason of his own acts, and rendered judgment accordingly. Appellant perfected his appeal contending that the trial court erred in so holding.

The oral testimony of appellant and several photographs introduced in evidence reveal that the parkway extended east and west for a distance of a city block separating the street from any number of business houses along the north side of the block and that there was a sidewalk parallel to the parkway for the whole distance of the block between the parkway and the business houses; that within the bounds of the parkway were located utility poles, utility meters, water meters, trees and commercial signs other than the one here in question; that at several intervals there were paved sidewalks across the parkway for the use of pedestrians in crossing the parkway between the street and the business houses along the block, one such paved sidewalk being located about two feet east of the ox-yoke sign in question. The evidence reveals that this and other parkways in the city of Muleshoe were used for commercial signs, utility poles and meters and were not dedicated particularly for pedestrians except where concrete sidewalks were built across them for pedestrians to use in crossing the parkway. Appellant admitted he knew the parkway in question was being so used when he received his injuries.

It is admitted that Pat R. Bobo had the ox-yoke sign placed in the parkway during the spring of 1951 without the permission of anybody and after his monthly rental contract with the bank had become operative. However, there is no evidence that the sign bears any kind of inscription or painted sign on it but it merely adds a western style appearance to the location. Appellant testified that he remembered when Pat Bobo bought the sign and had it installed; that he had known it was there since it was installed some four or five years ago; that the sign is plainly visible from every direction and people passing near it cannot help but see it; that in fact it is plainly visible for a distance of two or three hundred feet from any direction except from the south where it can be plainly seen only from the bank building; that he knew the sign was of solid structure; that Pat Bobo for a long time was his attorney

and he had transacted much business with him since the sign had been placed there and always observed the sign which was attractive to him; that on the occasion when he bumped into the end of the sign he got out of his car and could have plainly seen the sign at all times if he had been looking; that the sign was only about eight or ten feet from his face at the time he got out of his car and there was nothing to prevent him from seeing it; that he did not seek to use the sidewalk leading across the parkway about two feet east of the sign because other cars were parked there; that as he approached the curb and started to step upon it somebody up the street east from him hollered at him and he turned and looked in that direction to see who it was and stepped upon the curb near the sign about the same time; that if he had been thinking about the sign, he would have seen it; that it was about seven inches across the end of the beam and there was nothing to obstruct his view of it; that the end of the sign was about two feet from the curb line "and there was nothing between me and it, and when I stepped up on that, there was room, but I guess I stepped up to close to the yoke and hit it;" that he would not have collided with the sign if he had been looking in the direction he was then going; that he had looked down at his feet and the curb before stepping upon it and had also looked to the east as he approached and stepped upon the curb south of him when his head hit the end of the sign and the impact knocked him down and injured him; that his eyesight was fairly good and that he would have seen the sign if he had been looking in front of him when he stepped upon the curb; that a stranger came along and helped him get up and into his car; that Pat Bobo and a Mr. Fox drove him home and that before going home Pat Bobo suggested that he take him (appellant) to a doctor to be examined but he declined to go see a doctor at that time; that he suffered that night and thereafter as a result of his said injuries and was later attended by a doctor; that he later asked Pat Bobo if he carried any liability insurance on the sign to cover his injuries received and Bobo said he did not.

The term "parkway" is usually that "space between the sidewalk and the curbing, which frequently is ornamented with grass or flower pots, trees and shrubs, and used for the location of poles, fire hydrants, meter boxes, etc., in connection with public utility service." 67 C.J.S., p. 868.

"A city has control of parkway strips along a street, between the sidewalk and the roadway, and may locate driveways across them at such places as it deems proper, or it may refuse to allow or construct a driveway where the requisites of safety do not permit its use. The construction of a driveway changes that portion of the strip over which it runs into a passage for vehicular traffic, and imposes upon the city the duty of maintaining it in a reasonably safe condition." 39 Tex.Jur. 612.

In the case of Kling v. City of Austin, Tex.Civ.App., 62 S.W.2d 689, the question of liability for damages was raised concerning traffic and the maintenance of a driveway across a city parkway furnishing ingress and egress to and from a filling station. The court there held that a duty was imposed upon the city to maintain a reasonably safe condition for vehicular traffic over that portion of the driveway that crossed the parkway, implying that the city was not required to make safe for vehicular traffic any other part of the parkway, being then used for shade trees, fire hydrants and utility poles. In the case at bar it is very evident that the city had constructed and was maintaining sidewalks for the use of pedestrians in crossing the parkway and that such a sidewalk was available nearby for appellant's use on the occasion in question had he elected to use it.

No cases have been cited and we have failed to find any cases involving liability such as appellant here claims by reason of his voluntarily walking into a visible and obvious sign located wholly with

in the bounds of a portion of a parkway not particularly dedicated for use of pedestrians and there receiving injuries. However, we believe there are well established rules of law controlling the issues here presented found in cases arising out of liability claims of invitees who received alleged injuries within business premises and as a result thereof sued the owner or operator of the business establishment involved for damages. In the recent case of A. C. Burton Co. v. Stasny, Tex.Civ.App., 223 S.W.2d 310, 311 (writ refused), plaintiff walked into a plate glass window in defendant's place of business and received injuries for which reason he sued defendant for damages. Plaintiff testified he had seen the window when he entered but upon leaving he was walking with his head down and did not see the window until he crashed through it. The jury exonerated plaintiff of negligence, convicted defendant of negligence and awarded damages to plaintiff. Judgment was accordingly rendered for plaintiff, but the appellate court reversed the trial court and held that defendant was not liable to plaintiff for damages by reason of his injuries and further held that an instructed verdict should have been granted. Among other authorities cited and reasons given for so holding the court there in quoting from another authority said in part:

"The court, in its opinion, quoting with approval from 45 C.J. 837, said: '"The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care." Again, at page 868, same volume: "No precautions are necessary where the danger is obvious and unconcealed, or known to the person injured, or where it was the duty of the person injured to do the thing, failure to do which caused the injury."'"

In our opinion the rules of law and the logical reasoning presented in the Burton-Stasny case prohibiting recovery fully apply to the factual situation presented here by appellant and admitted to be true. In fact, we believe that because of appellant's voluntary entry into that portion of the parkway not particularly prepared for use of pedestrians and not being an invitee himself by any of the appellees or anybody else and without exercising the ordinary care of a prudent person, collided with a visible and obvious solid structure known by him to have been there four or five years, merely for attractive purposes and not for profit or gain by Pat Bobo or anybody else, and thereby received injuries as a result of his own admitted acts which constituted negligence, he has less grounds for recovery in the case at bar than those shown in the Burton-Stasny case.

In the case of Marshall v. San Jacinto Bldg., Tex.Civ.App., 67 S.W.2d 372 (writ refused), the court, under a similar set of facts, announced the same result of no recovery and cited in support thereof many of the same rules of law and particularly approved an instructed verdict.

The previously cited rules of law were approved by the Texas Supreme Court in the very recent case of Robert E. McKee, General Contractor v. Patterson, Tex.Civ. App., 271 S.W.2d 391, 394, wherein the court also announced the following general rule:

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and

appreciate. 38 Am.Jur. 845 et seq., Negligence, Secs. 171–173; 65 C.J.S., Negligence, § 174, p. 848; Levlon v. Dallas Railway & Terminal Co., Tex.Civ.App., 117 S.W.2d 876, writ refused; Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172, 174; Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, 610."

In the case at bar appellant sustained his alleged injuries while voluntarily exposing himself to a visible and obvious danger which he fully realized and appreciated, for which reason we believe appellees are not liable and appellant is not entitled to recover as against any of them. Other authorities cited are Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; Texas Co. v. Grant, 143 Tex. 145, 182 S.W.2d 996; Camp v. J. H. Kirkpatrick Co., Tex.Civ.App., 250 S.W.2d 413; Gonzalez v. Broussard, Tex.Civ.App., 274 S.W.2d 737; Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S.W.2d 54, 61 A.L.R. 242.

While Pat Bobo as an attorney performed certain kinds of legal work for the bank, there existed no relationship between him and the bank other than that of landlord and tenant on a monthly basis. A landlord, such as the bank, was under no duty to keep the parkway between the sidewalk and street in front of its tenant's office free of hazards and particularly the ox-yoke sign placed in the parkway by its tenant, Pat Bobo, after his rental contract with the bank became operative. In addition to the other authorities herein cited we likewise cite the following authorities in support of our last statement made. Marshall v. Heard, 59 Tex. 266; Texas & P. R. Co. v. Mangum, 68 Tex. 342, 4 S.W. 617; Wilkerson v. Brin, Tex.Civ.App., 268 S.W. 1010; Standard Realty Co. v. Bacon, Tex.Civ.App., 60 S.W.2d 844; Jackson v. Amador, Tex.Civ.App., 75 S.W.2d 892; Ward v. Wallace, Tex.Civ.App., 175 S.W.2d 611; Medlin v. Havener, Tex.Civ.App., 98 S.W.2d 863; 52 C.J.S., Landlord and Tenant, §§ 424 and 427, pp. 97–100.

In our opinion the authorities cited and relied upon by appellant do not apply to the factual situation here presented and in any event do not control such. For the reasons stated herein, appellant's points of error are all overruled and the judgment of the trial court is affirmed.