William G. RITTENBERRY, Appellant,

v.

ROBERT E. McKEE, GENERAL CONTRACTOR, INC., et al., Appellees.

No. 15593.

Court of Civil Appeals of Texas.

Dallas.

March 18, 1960.

Rehearing Denied July 1, 1960.

Akin & Vial, Dallas, for appellant.

Leachman, Gardere, Akin & Porter, Edward E. Crowell, Jr., Thompson, Knight, Wright & Simmons, Pinkney Grissom and David S. Kidder, Dallas, for appellees.

DIXON, Chief Justice.

Appellant William G. Rittenberry filed this suit for damages against Robert E. McKee, General Contractor, Inc. and Westinghouse Electric Corporation, appellees. Rittenberry, an employee of Davis Brothers, paint contractors, was engaged in painting a room on the fourth floor of a building under construction for the Dallas Public Library, when he fell into an open elevator shaft and sustained serious personal injuries.

Robert E. McKee, General Contractor, Inc., was the general contractor in charge of construction of the building. Westinghouse Electric Corporation had a separate contract with the owner, City of Dallas, for installation of elevators in the building.

In his petition appellant alleges numerous acts of negligence on the part of both appellees as proximate causes of his injuries. Among other acts, he charges appellees with failing to inspect the premises, warn appellant of certain named dangerous conditions, provide adequate light, provide cover for elevator openings, pro-

vide barriers before elevator shaft, and with violation of Art. 5182, Secs. 2, 3 and 4, Vernon's Ann.Civ.St.

The statute above referred to requires that owners and contractors in the course of constructing a building shall enclose elevators and shafts on all sides; requires that any building three or more stories in height, in the course of construction, shall have joists, beams or girders of every floor below the floor level where work is being done, covered with planking laid close together to prevent workmen from falling; and places responsibility on the general contractor in charge to make such arrangements with subcontractors as may be necessary to see that the provisions of the statute are carried out.

Lumbermen's Mutual Casualty Company, workmen's compensation insurer for Davis Brothers, intervened to recoup workmen's compensation and medical benefits in an amount in excess of $15,000 paid to Rittenberry. The Casualty Company appears in this appeal as an appellant.

Both appellees filed motions for summary judgment and both their motions were sustained.

Appellants brief only one alleged point of error: that the record before the court shows conclusively that their causes of action present questions of fact for jury determination.

Appellees in counter-points defend the court's action in granting summary judgment on the grounds that the uncontroverted facts establish, as a matter of law, that (1) appellant Rittenberry voluntarily encountered a known risk—the doctrine of volenti non fit injuria; and (2) appellant Rittenberry was guilty of contributory negligence. Appellee Westinghouse Electric Corporation presents a third counter-point: that the uncontroverted facts establish, as a matter of law, that appel-

lee Westinghouse Electric Corporation did not owe appellant Rittenberry a duty to provide him with a safe place in which to work.

### Facts.

The physical facts and the events which have to do with appellant's injury, as shown by depositions and affidavits, are undisputed.

At the time of his fall on April 14, 1955, Rittenberry was about 52 years of age, and had been a professional painter since 1925. He had been working on the Dallas Public Library job about five weeks. Three or four days prior to his fall, appellant and another painter named J. B. Robinson had painted the ceiling of the room from which appellant fell. The room was 16 X 18 feet in dimensions. It was an inside room with no windows. The elevator shaft was on the east side of the room and the opening was approximately 40 inches wide. There were no barricades in front of the opening. Rittenberry testified that in the four or five weeks he had worked on the job he had never seen any form of barricade across the opening of the elevator shaft.

There were no lights installed in the room, so the painters were using a drop cord with a 200-watt light bulb. Concerning this light and his ability to see the unbarricaded opening Rittenberry testified as follows:

"Q. As I understand it you had used this two hundred watt globe there inside of the room, and it furnished enough light that you could see all around the room, and also the elevator shaft on the east wall, and all around; is that correct? A. Well, yes; we would move the light some, in any direction.

"Q. You could see that the elevator shaft was right there, by the light that you had, couldn't you? A. Yes.

"Q. And you knew where it was, and you also knew that it was not barricaded? A. Yes.

"Q. With the light you had in that room could you see the elevator shaft? A. Oh, sure.

"Q. What is the last time, or when is the last time you had noticed the elevator shaft before you had this fall? A. When Robinson was working by it.

"Q. About how long was it before you fell? A. It was not very long; just a few minutes."

On the day of the accident appellant and two other painters J. B. Robinson and W. C. Flowers were sent to the room to give the ceiling a second coat of paint. Appellant warned Robinson to be careful because the elevator shaft opening had no barricades.

Since we consider appellant's testimony conclusive on the question of his knowledge of the opening and its dangerous character, we quote from his testimony:

"Q. * * * had you noticed that particular morning to see whether there were any barricades up or not? A. Well, I noticed that there was an opening, when I went up there; I noticed that it was open, and I told Robinson when we went by there, I told him 'Be careful, there ain't no barricade over that opening'.

"Q. Of course you had never seen a barricade over any of the openings anyway? A. No.

"Q. And you knew that there was no barricade over that opening on that particular day? A. That's right. * * * A. I had told him to be careful; I told him to be careful about it, to be particular because there was not anything over it; I had told him that the barricade was not on it, and for him to be particular about it, because I thought maybe

that it might throw him over there or something; I told him to be particular about it.

"Q. And at that time you had seen that the two by four was not over the opening? A. Yes; I hadn't seen any barricade up there at all. * * *

"Q. Would you regard it as a dangerous condition if the shafts were not barricaded? A. Naturally.

"Q. That was the purpose of having the barricade over the openings, wasn't it? A. Yes, that was the purpose of having them, to keep anybody from falling in.

"Q. And that was the reason you warned Mr. Robinson about it, wasn't it? A. That's right.

"Q. And you yourself about a week before this happened had been warned by Mr. Cooley, hadn't you? A. It was longer than that.

"Q. How much longer than that was it? A. Maybe about two or three weeks before.

"Q. At least you had been warned by him, hadn't you? A. That's right."

Appellant further testified that on the morning of the accident he was painting the ceiling of the room, using a 6 foot rolling scaffold. He had painted past the shaft opening, working from north to south. He came down from the scaffold, and was standing on the floor looking up for "holidays" (thin places in the paint). He was standing with his back to the shaft, holding a paint brush in one hand and the light in the other hand, and the light was blinding him so he couldn't see the shaft, though he knew it was there. The last thing he recalls was saying something to Mr. Robinson about pushing the scaffold over to him.

As to what happened thereafter we have the affidavits of the other two painters,

Robinson and Flowers. We quote from Robinson's affidavit:

"At the time Rittenberry fell, we had just completed painting. He and I had been working on a scaffold. Rittenberry had a light with an extension cord on it and checking the ceiling to see if we had missed any spots. He was backing up and backed into the elevator shaft and fell.

"I was on the floor and on the other end or side of the scaffold from him when he fell. He had been moving the scaffold as he moved back. * * *

"Rittenberry was looking at the ceiling and backing up when he fell with the light in his left hand."

Robinson's description of the accident is in substantial agreement with that of Flowers, from whose affidavit we quote:

"He had been painting the ceiling and was checking back over the area where he had painted with a large flood light to see if he had missed any part of the ceiling. He was walking backwards with this large flood light in his hand looking up at the ceiling and apparently backed into the elevator shaft.

"The last time I saw him he was about four or five feet from the shaft · and backing up with the flood light in his hand and pulling a scaffold with him. The next thing I knew the other man working with us, who was J. B. Robinson, called and said Bill had fallen down the elevator shaft."

### Opinion.

█ Even when considered in a light most favorable to appellant Rittenberry the evidence in this case does not raise a genuine issue as to any material fact to be determined by the court or jury.

Appellant seeks to recover damages because of the negligence of appellees in failing to provide him a safe place in which to work. But under the undisputed facts appellant is not entitled to recover because appellees have pled and the undisputed facts show that the principle of volenti non fit injuria—voluntary encountering of risk —is applicable, and establishes a good defense to appellant's suit as a matter of law.

The doctrine of volenti non fit injuria is discussed at considerable length by our Supreme Court speaking through Justice Calvert in Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S. W.2d 391, 394. In that case the Court held that a general contractor owes a duty to employees of subcontractors similar to that owed by an owner or occupier of land to his invitees. In its discussion the Court stated that it is the well-settled law of this State that there is no duty on the owner of premises to take precaution to protect his invitee from dangers on the premises of which the invitee is or should be fully aware and which he voluntarily encounters. Further discussing the matter the Court stated:

"In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate."

In the instant case appellant Rittenberry himself testified that he knew the elevator shaft was not in any manner barricaded, and he knew it was dangerous. In fact he had warned his two fellow workmen that the unbarricaded shaft was dangerous. Yet he neither refused to work with the danger present, nor did he report the situation to his employers. Instead he voluntarily chose to proceed to work notwithstanding the dangerous condition of the premises.

█ Appellant will not be heard to say that he did not voluntarily expose himself to the risk because he had no alternative: he had to work in the presence of the dangerous condition or not at all. This contention was rejected by our Supreme

Court in Robert E. McKee, General Contractor, Inc. v. Patterson, supra, in which the Court quoted an earlier Court of Civil Appeals opinion in Bonn v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 82 S.W. 808, 814, as follows:

"The mere fact that a servant exposed himself to an abnormal risk because he feared that if he did not do this he would lose his position, is not considered to be evidence of legal constraint."

Appellant contends that since appellees violated a statute, Art. 5182, V.A.C.S., the defense of voluntary exposure to risk is not available to them. In support of this view appellant quotes from the opinion in Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022. The above-named case had to do with the relationship of master and servant and the defense of assumed risk. In this case we are not concerned with that relationship or that defense. Neither of appellees was the employer of appellant Rittenberry. His employers were Davis Brothers, the paint subcontractors, who are not parties to this suit. They carried workmen's compensation insurance and Rittenberry has already collected more than $15,-000 from Lumbermen's Mutual Casualty Company, the insurance carrier. As pointed out by Justice Calvert in the opinion in Robert E. McKee, General Contractor, Inc. v. Patterson, supra, the doctrine of volenti non fit injuria, with which we are here concerned, involves a relationship similar to that of an owner of premises and an invitee with rights and duties incident to that relationship.

■ We are also of the opinion that appellant Rittenberry is precluded from recovering in this case because of his own contributory negligence. Contributory negligence is ordinarily a question of fact, but where the facts are undisputed they may establish contributory negligence as a matter of law. We think that is so in this case. Appellant had his back to the elevator shaft. He knew where the opening was located. Without keeping a proper lookout he walked several feet backward through the opening. In our opinion the undisputed facts in this record make out a case of contributory negligence as a matter of law. Otto v. Bobo, Tex.Civ.App., 287 S.W.2d 274; Fain v. Goodyear Tire & Rubber Co., 5 Cir., 228 F.2d 508. Though appellees' negligence may have included violation of a statutory duty, the defense of contributory negligence was available to them. Burnett et ux. v. Fort Worth Light & Power Co., 102 Tex. 31, 112 S.W. 1040, 19 L.R.A.,N.S., 504; Mula v. Meyer, 132 Cal. App.2d 279, 282 P.2d 107.

Appellee Westinghouse Electric Corporation had a separate contract with the City of Dallas. This contract expressly provides that Westinghouse was to install the elevators, but certain preparatory work in conjunction with the installation of the elevators was to be done by other contractors. The work thus expressly excluded from the Westinghouse contract, which Westinghouse was not to perform, and which was to be performed by other contractors included the following: preparation of legal hoistway properly framed and enclosed, adequate access doors, ladders, and guards, and all openings.

■ Appellant Rittenberry in his pleading charges Westinghouse only with acts of omission, such as failure to erect barricades, etc. Under the terms of its contract Westinghouse was not in charge or control of the premises where appellant was working and where he fell. That being so Westinghouse owed appellant no duty to provide a safe place for him to work.

Appellant's point on appeal is overruled. Appellees' three counter-points are sustained.

Judgment of the trial court is affirmed.