**David Florez MONTEZ, Appellant,**

v.

**BAILEY COUNTY ELECTRIC CO-OPERA-TIVE, Appellee.**

No. 7533.

Court of Civil Appeals of Texas. Amarillo.

Oct. 25, 1965.

Rehearing Denied Nov. 22, 1965.

William J. Gillespie, Lubbock, for appellant.

Albert Smith, Lubbock, for appellee.

DENTON, Chief Justice.

David Florez Montez brought this suit for himself and in behalf of Pacific Employers Indemnity Company, his employer's workmen's compensation carrier, against Bailey County Electric Co-Op to recover for personal injuries sustained by Montez. The trial court rendered a summary judgment that the plaintiffs take nothing. Plaintiffs below have perfected this appeal.

Montez was an employee of the Watson Drilling Company, whose business was that of drilling irrigation water wells. He was severely burned when the defendant's power line came in contact with either a metal cable held by Montez or a "gin pole" attached to the Watson Company's truck being used in the well drilling operation. On February 20, 1963, the Watson Company was engaged in drilling and the completion of a water well on the Charles T. Seaman farm in Cochran County, Texas. Montez was a member of the Watson crew on the job. Some two hours after the crew began working on the day of the accident, the drilling was completed. The crew then began their operation to complete the well which included bailing water from the hole by the use of a "bailer." The irrigation well was approximately twenty feet east of appellee's power line which ran north and south along the edge of the Seaman farm. Appellee had acquired an easement for the erection of the transmission line. Just prior to the accident Montez was in the process

of attaching the bailer to a cable which was connected to the gin pole on the rear of a truck being used in the operation. The truck was facing south approximately thirty feet east of the transmission line when the bailing operation was temporarily suspended. Montez took the bailer out of the hole and guided it to the ground between the truck and the power line. It rested some five feet from the line. Another Watson employee began to back up the truck in the direction of the power line to put it into position to pick up the bailer. Montez was holding the cable, which ran through a pulley attached to the gin pole, and was about to fasten the cable onto the bailer when either the cable or the gin pole came in contact with the power line. There was no evidence to show how high the gin pole extended into the air, but Montez testified by deposition it was sticking straight up.

■ A movant is entitled to a summary judgment only where there is no genuine material issue of fact in the case; and in determining whether the movant has sustained its burden, we must view the evidence in the light most favorable to the party opposing the motion. Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557.

■■ By the pleadings, affidavits, and deposition it is uncontroverted Montez was an invitee of the land owner or occupier. The well drilling crew, which included Montez, was on the land for the purpose of drilling a well for the land owner. As an employee of the drilling company, which was on the premises engaged in a business of mutual benefit to the driller and the owner or occupier, Montez was on the premises as an invitee. Snelling v. Harper (Tex.Civ. App.), 137 S.W.2d 222 (Dismissed, Judgment Correct). As an invitee of the land owner or occupier, the plaintiff assumes the same relationship with the defendant, who is the owner of an easement on the premises. It therefore follows that the defendant stands in the same legal position as the land owner or occupier insofar as its duty to the invitee is concerned. That is, the defendant owes the same duty to Montez as does the occupier of the land.

■ The Supreme Court in Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, places the burden upon the plaintiff in this type of case in the following language:

"So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a duty to take reasonable precautions to warn him or protect him from such danger, i. e., the plaintiff must negative 'no duty.' This is the 'no duty' referred to in the cases. Academically, it may be a rather clumsy concept, but it is still the law. Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948)."

Thus, if the summary judgment evidence presents a "no duty" or "volenti" case, consideration of contributory negligence and proximate cause do not enter into the case. The defendant's motion for summary judgment is based on the affidavit of Harold Cowan, an assistant line superintendent for the defendant, and the deposition of Montez. Cowan heard of the accident by two-way radio and was at the scene approximately fifteen minutes later. He described the location of the truck and its pulling unit and stated the gin pole or boom "was sticking straight up in the air and was about 8 or 10 foot east of the electric lines—the best I remember." He examined the tire tracks and "I could see that the pulling unit had been backed under the distribution lines, and that the truck had then been driven forward—or to the east." He placed the irrigation well about twenty feet east of the distribution lines. His affidavit further stated:

"The span between the poles at that point was about 475 feet. I did not

measure the span or the heighth of the lines at that time, but in my best judgment and from my experience of more than 10 years in working on and around these electrical distribution lines, my best judgment is that the three phase wires were very close to 25 feet above the ground level at the point where the truck tracks went under the distribution lines, and that the neutral line was 21 feet above the ground level—give or take 6 inches. The foregoing three phase wires and the neutral wire are all of the electrical lines which were located at the scene of the accident. In the middle of the span—at the lowest point in the wires—it is my best judgment that the three phase wires were 23 feet above the ground—give or take 6 inches, and that the neutral line was approximately 19 feet above the ground —give or take 6 inches."

By deposition Montez testified he had noticed the power lines at the scene before the accident and stated that there were four lines strung on the poles. . He further testified:

"Q. Did you know that electricity was dangerous?

A. Yes, Sir.

Q. Did you know that these power lines out around these irrigation wells in the country around here are dangerous if you come in contact with them?

A. Yes, Sir.

Q. Did you know that those power lines were dangerous when you went out there and went to work for Mr. Watson on that drilling rig?

A. Yes, Sir."

Montez subsequently made an affidavit which tended to expand upon the testimony he had given in his deposition. He stated he did not know the power lines were not insulated; that he believed them to be; that he did not know the amount of voltage car-

ried in the lines; that he did not know the lines could be blown out of vertical alignment; that he did not know the height of the lines, nor the height of the gin pole on the truck; that he did not know that there was current passing through the lines; that he was not warned of the condition; that he did not knowingly come in contact with the lines; that he was concentrating on his job at the time of his injury; that he did not realize that the bailer and gin pole were in hazardous proximity to the lines; if they were; and he did not see the lines blowing when he came on the job. Although these statements in the affidavit tend to expand or negative certain portions of his deposition, they do not repudiate or contradict portions of his deposition which are vital and material to this case.

It is appellant's contention that parts of the affidavit of Cowan are inadmissible for summary judgment purposes in that his testimony was not made of personal knowledge and was a conclusion of the witness. The test to determine whether or not an affidavit is effective to either support or oppose a motion for summary judgment has been given by the Supreme Court in Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396. There the court held such affidavits "must be made by competent affiants with personal knowledge of the statements in them, which statements must be so worded that if given on the witness stand they would be admissible as evidence." In our opinion Cowan's affidavit comes within this requirement. The fact he testified he did not measure the height of the lines does not render his estimates inadmissible, nor does the phrase "give or take 6 inches" render the statement inadmissible. The phrase, "the best I remember" is simply an explanation often used by witnesses to describe an object or scene they have viewed. Estimates of age, size, weight, distance, etc. made by qualified witnesses are generally held to be admissible. McCormick and Ray, Texas Law of Evidence, 2nd Edition, Section 1436, and authorities cited therein. Cowan had been an employee of the defend-

ant for fifteen years, the last four as assistant line superintendent. We think this background and experience clearly qualified him to testify as a witness to these matters he observed at the scene of the accident.

By deposition Montez admitted that he noticed the transmission line before the accident and told of the number of lines strung on the poles; and that he knew the power lines were dangerous when he went on the job. We are aware of the rule laid down in Gaines v. Hamman, supra, "[i]f conflicting inferences may be drawn from the deposition and from the affidavit of the same party, a fact issue is presented." However, an examination of Montez' deposition and affidavit clearly show that while he denies specific knowledge as to insulation, amount of voltage, etc., he admits by deposition he saw the lines and realized they were dangerous. His affidavit does not repudiate these statements. He further testified he did not know what the defendants should have done that they did not do to prevent the accident. We find no evidence in this record that the lines were blown or moved from their vertical alignment at any time material to this case. Montez simply stated in his affidavit he did not see the lines blowing when he came on the job. This is no evidence they did in fact move.

The doctrine of volenti non fit injuria is an affirmative defense. For the defense of volenti to be controlling it must first be shown that the plaintiff actually knew and appreciated the danger and "assumed the risk" with an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172; Halepeska v. Callihan Interests, Inc., supra. The cases are agreed that this defense is based on knowledge and appreciation of the danger and voluntary assent thereto. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449. Justice Greenhill in Hale-

peska v. Callihan Interests, Inc., stated the rule:

"On the basis of Wood v. Kane Boiler Works, and cases following it, therefore, for volenti to be applicable, there must be actual knowledge and appreciation; or the danger must be so open and obvious that the plaintiff is charged in law with knowledge and appreciation thereof. So the plaintiff must know (an issue of fact, usually) or be charged in law with knowledge and appreciation."

We are convinced that under the rules announced in the above-cited case the undisputed facts show Montez actually had knowledge of the presence of the power lines and appreciated their danger. It therefore follows the defense of volenti non fit injuria applies. Montez, by his own statement, saw the power lines and admitted they were dangerous. He was fully aware of the close proximity of the power lines to the working area. This record clearly establishes the actual knowledge and appreciation of the danger by Montez to invoke the defense of volenti. We are of the opinion, and so hold, the record raises no issue of fact as to his knowledge of the dangerous conditions encountered and his appreciation thereof. In addition we think the uncontroverted facts of this case bring it within the rule where the condition was such the plaintiff may not close his eyes to obvious danger; and he may not recover when it is shown he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607. We therefore conclude the trial court correctly held as a matter of law that the plaintiff below had knowledge and appreciated the danger. See Tyler v. McDaniel (Tex.Civ. App.), 386 S.W.2d 552 (Refused, NRE). The judgment of the trial court is accordingly affirmed.