**Paul MARSHALL, Appellant,**

v.

**John C. RANNE, Appellee.**

No. 18049.

Court of Civil Appeals of Texas, Dallas.

March 22, 1973.

Rehearing Denied April 12, 1973.

James F. Bowen, Brown, Brown & Bowen, Garland, for appellant.

Herbert Boyland, Kenley, Boyland, Hawthorn, Starr & Coughlan, Longview, for appellee.

GUITTARD, Justice.

Plaintiff sued for damages resulting from being bitten by defendant's hog. The jury found that plaintiff knew that the hog was vicious and likely to cause injury and that he voluntarily exposed himself to the risk of attack. Judgment was rendered for defendant, and plaintiff appeals contending that there is no evidence, and in the alternative insufficient evidence, to support the jury's finding that plaintiff voluntarily exposed himself to the risk. Our review of the record convinces us that the evidence is sufficient.

The only witness to the occurrence was plaintiff. He and defendant both lived in Dallas, but they owned neighboring farms in Van Zandt County. Plaintiff's principal

occupation was raising hogs. At the time of the injury he had about two hundred on his farm. The hog in question was a boar which had escaped from defendant's farm and had been seen on plaintiff's land during several weeks before the day of the injury. According to plaintiff, defendant's boar had charged him ten to twelve times before this occurrence, had held him prisoner in his outhouse several times, and had attacked his wife on four or five occasions. On the day of the injury plaintiff had hauled in several barrels of old bread in his pickup and had put it out for his hogs at the barn. At that time he saw defendant's boar about a hundred yards behind the barn, but it came no nearer. After feeding his hogs, he went into the house and changed clothes to get ready to go back to Dallas. On emerging from the house, he looked for the boar because, as he testified, he always had to look before he made a move, but he did not see it. He started toward his pickup, and when he was about thirty feet from it, near the outhouse, he heard a noise behind him, turned around, and saw the boar charging toward him. He put out his hand defensively, but the boar grabbed it and bit it severely.

Plaintiff testified that the first time the hog had jeopardized his safety was about a week or ten days before he was hurt. He did not shoot the hog because he did not consider that the neighborly thing to do, although he was an expert with a gun and had two available. He made no complaint about the hog to defendant until the day of the injury, when he wrote a note and put it on defendant's gate. The note read:

> "John, your boar has gone bad. He is trying to chase me off the farm. He stalks us just like a cat stalks a mouse every time he catches us out of the house. We are going to have to get him out before he hurts someone."

This note did not come to defendant's attention until he came in late that afternoon, and the evidence does not reveal whether he saw it before plaintiff was injured. Plaintiff testified that he and defendant had previously discussed the hog's viciousness on several occasions. Defendant denied any previous knowledge that it was vicious and testified that when he had talked to plaintiff about the hog plaintiff had told him not to worry because his hogs had been on defendant's land and that one more hog was not going to bother plaintiff because he had a hundred and defendant had only two.

Plaintiff does not challenge the finding that he knew the vicious propensities of the hog and that it was likely to cause injury. He complains only of the finding that he voluntarily exposed himself to the risk of attack. He argues that he looked carefully before proceeding from his house to his pickup and that he could have done nothing else but remain forever a prisoner in his own house.

Plaintiff's difficulty in using and enjoying his property without exposing himself to attack was a factor for the jury to consider in determining whether the exposure was voluntary. However, lack of an acceptable alternative is not necessarily conclusive on the issue. *Cf.* Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Rittenberry v. Robert E. McKee, General Contractor, Inc., 337 S.W.2d 197 (Tex. Civ.App., Dallas 1960, writ ref'd n. r. e.). The evidence here supports the jury's conclusion that abandonment of the farm to defendant's hog was not plaintiff's only alternative. He could have notified defendant to remove the animal when he first became aware of its vicious nature, and if defendant had failed to do so promptly, plaintiff would not have been blamed for destroying it. As an experienced hog raiser and expert marksman, he could at least have provided some means of defense. Since he did not do so, the jury could well have inferred that he deliberately took his chances.

Neither did plaintiff's inability to locate the hog when he ventured out of the

house establish that he did not voluntarily expose himself to the danger. Admittedly, plaintiff was aware of the danger of attack by the hog, and thus had the knowledge of specific danger required to raise this defense under Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). The evidence need not show that he knew injury was imminent. Rabb v. Coleman, 469 S.W.2d 384 (Tex.1971); J. & W. Corp. v. Ball, 414 S.W.2d 143 (Tex. 1967); Montez v. Bailey County Electric Co-Operative, 397 S.W.2d 108 (Tex.Civ. App., Amarillo 1965, writ ref'd n. r. e.). Even though plaintiff did not see the hog when he looked for it, he knew that it was nearby, since he had seen it near the barn before he went into the house, and he knew that it was capable of rapid movement. He consciously chose to walk toward his truck, passing the outhouse where the animal had previously held him prisoner. He carried no weapon to defend himself, though he was expert in the use of a gun. From this evidence the jury was justified in concluding that plaintiff knew the risk he was taking but was willing to take it, since he has escaped unharmed from previous attacks.

■ Moreover, the jury's consideration of the issue of voluntary exposure was not confined to his actions at the particular time plaintiff attempted to walk from his house to the pickup. According to his own testimony, he had endured the animal's attacks over a period of a week or ten days and had made no complaint to defendant until the morning of the injury, when he put the note on defendant's gate. The jury was at liberty to accept defendant's testimony that this note was the first information he had had of any danger from the hog, and that plaintiff had previously told him not to worry about the animal's presence on plaintiff's farm. Thus the jury was justified in concluding that plaintiff chose to go about his property for several days, enduring vicious attacks, and taking no measures for his own safety, and that

after posting the note but before defendant could take any action, plaintiff ventured again into the zone of danger. Viewed in this light, the case is ruled by decisions holding that no damages may be recovered for an injury resulting from conscious exposure to a danger which the injured party had previously complained of. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952); Cummins v. Halliburton Oil Well Cementing Co., 319 S.W.2d 379 (Tex.Civ.App., El Paso 1958, no writ); Kirby Lumber Co. v. Murphy, 271 S.W.2d 672 (Tex.Civ.App., Beaumont 1954, no writ).

The finding of voluntary exposure to the risk, which we hold to be supported by sufficient evidence, is a complete defense to the suit and requires affirmance of the judgment for defendant. Consequently, we need not consider plaintiff's contentions concerning the availability of contributory negligence as a defense or the adequacy of the damages found by the jury.

Affirmed.